Jonathan **CLAYTON**, a minor by Connie **CLAYTON** his next friend; Steve Blakley, a minor by Tressia Blakley his next friend; David Mareth, a minor by Marilyn Mareth his next friend; Mark Flummerfelt, a minor by Carolyn Flummerfelt his next friend; Michael Beagle, a minor by James M. Beagle his next friend; George Fox, a minor by Joan Fox his next friend; Amy Dianne Wolf, a minor by Frances Ann Wolf her next friend, Anna Svetlecic, a minor by Vicki Svetlecic her next friend, Connie Clayton, Tressia Blakley, Vicki Svetlecic, Walter Welch, Sherry Welch, Robert Mareth, Marilyn Mareth, Michael Flummerfelt, Carolyn Flummerfelt, Frances Ann Wolf, Joan Fox, Howard Fox, Jr. and James M. Beagle, Plaintiffs,

v.

Richard M. **PLACE**, Glen Garrett, Rex Henderson, Allen Keeling, Art Negre, Jacqueline Stephens, and Jim Terry, all in their individual and official capacities, and Purdy R–II School District, Defendants.

No. 86–5184–CV–SW–4.

United States District Court, W.D. Missouri, Southwestern Division.

Aug. 1, 1988.

William J. Fleischaker, Roberts, Fleischaker & Scott, Joplin, Mo., Larry M. Schumaker, Shook, Hardy & Bacon, Kansas City, Mo., for plaintiffs.

Ransom A. Ellis, Jr., Ransom A. Ellis, III and Rick E. Temple, Ellis, King, Ellis & Black, Springfield, Mo., for defendants.

---

## ORDER

RUSSELL G. CLARK, District Judge.

Plaintiffs, school children, parents and taxpayers of the Purdy R–II School District bring this action against the defendants, the school board and school superintendent of Purdy R–II School District alleging a violation of the First Amendment of the United States Constitution. The plaintiffs allege that Policy Rule 502.29 of the Purdy R–II School District endorses or advances the "no dance" religious beliefs of the Purdy community and thus violates the Establishment Clause of the First Amendment. Defendants deny that Rule 502.29 has any religious significance, but rather argue that it is merely a reflection of the Purdy community's "cultural conservatism." This case was tried to the Court without a jury from June 27, 1988 through June 30, 1988.

The issue before this Court is not (as defendants contend) whether the Purdy School District must sponsor social dances, nor is it the responsibility or perogative of this Court (as plaintiffs contend) to mandate how many, if any, or when school dances are to be held. The issue is simply whether the rule which prohibits school dances in the Purdy school system is an impermissible establishment of religion. For the following reasons, the Court finds that Rule 502.29 of the Purdy R–II School District violates the United States Constitution, specifically, the Establishment Clause of the First Amendment.

Pursuant to Rule 52, Fed.R.Civ.P., the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. Plaintiffs Jonathan Clayton, Michael Beagle, George Fox and Amy Diane Wolf are 1988 graduates of Purdy R–II High School.

2. Plaintiffs Steve Blakley, Mark Flummerfelt and Anna Svetlecic are currently enrolled in Purdy R–II High School.

3. Plaintiffs Connie Clayton, Tressia Blakley, Vickie Svetlecic, Walter Welch, Sherri Welch, Robert Mareth, Marlene Mareth, Michael Flummerfelt, Carolyn Flummerfelt, Francis Ann Wolf, Joan Fox, Howard Fox, Jr., and James M. Beagle are parents of children who have attended, are attending, or in the near future will attend Purdy R–II High School. Each of these plaintiffs also is a taxpayer in the Purdy R–II School District.

4. Defendant Richard M. Place is the former superintendent of the Purdy R–II School District.

5. Defendant Sheldon Buxton is the present superintendent of the Purdy R–II School District.

6. Defendants Glen Garrett, Rex Henderson, Allen Keeling, Art Negre, and Jim Terry currently are and, since at least 1985, have been members of the Board of Education of the Purdy R–II School District.

7. Defendant Launce Bunnell currently is a member of the Purdy R–II Board of Education.

8. Defendant Jacqueline Stephens was a member of the Board of Education of the Purdy R–II School District during 1986, but is not currently on the Board.

9. Each of the plaintiffs in this case are residents of the Purdy R–II School District, Barry County, Missouri, within the Southwestern Division of the United States District Court for the Western District of Missouri.

10. Defendant Purdy R–II School District is a duly constituted school district under the laws of the State of Missouri, and is located in the County of Barry, State of Missouri. Defendant School District offers education to children in grade levels kindergarten through twelve at facilities located within the corporate limits of the City of Purdy, Missouri.

11. Each of the individual defendants were residents of Barry County, Missouri at the time of the filing of this lawsuit.

12. Defendant School District's Policy 502.29 states:

*Secret Organizations—School Dances.* No fraternities, sororities, secret societies, or organizations shall be permitted, nor shall any student organization be permitted to elect its [sic] own membership. School dances are not authorized and school premises shall not be used for purposes of conducting a dance.

13. At the January 9, 1978 school board meeting, student council representatives and class representatives requested permission to allow school dances to be held at school. The School Board voted the request down by 4–2.

14. Board member Jim Terry voted to allow dancing. Jim Terry was defeated in the next school board election.

15. In October 1984, Purdy students Ed Mareth, Kevin Keeling and Eddie Ray contacted Superintendent Place to request permission to have a homecoming school dance. Superintendent Place, who was and is in favor of the school dances, contacted the board members to get their views.

16. Board president Garrett thought it might be time to try it, but stated that the last time the dance issue was brought up it generated a lot of heat. Board member Terry said he would favor changing the rule unless the change generated a lot of controversy. Board member Stevens was in favor of changing the rule.

17. Board member Keeling opposed changing the rule stating that he may be considered a hypocrite for allowing his children to dance, but he sincerely believed that most people did not want the rule changed. Board member Henderson's views were similar to Keeling's views. Board member Negre was also concerned about community support and possible school chaperoning. No formal request was made to the school board at that time and the board took no action.

18. During the 1985–86 school year, another group of students and parents sought to change Rule 502.29. At a January meeting with Superintendent Place, when questioned by the parents about the reasons for the prohibition, Superintendent Place stated words to the effect "why should this surprise you, this is a conservative, religious community." When asked if it were the Baptists that opposed dancing, Superintendent Place stated, "Let's just say protestants."

19. Prior to the February meeting, Board member Keeling told Caroline Plummerfelt that he opposed changing the rule because his church preached that it was wrong and immoral to dance.

20. At the February 10, 1986 school board meeting, plaintiffs Connie Clayton, Tressia Blakely, Marlene Mareth, Carolyn Flummerfelt, James Beagle, Joan Fox, Robert Mareth and Michael Flummerfelt appeared to request a reconsideration of Rule 502.29 in order to sponsor a dance by the newly formed SADD (Students Against Drunk Driving) chapter. At the meeting the school board members discussed all of the telephone calls they had been receiving concerning the dance issue. The board members now state the callers gave no reasons for maintaining the rule. Reverend Ted Davis and his wife were present at the meeting to state their opposition to a change in the rule. When Reverend Davis was asked for his reasons, board president Garrett stated that he did not have to tell anyone his reasons. Garrett stated "you'd better hope there's never separation of God and school" in response to a question about the separation of church and state. Rev. Davis then asked for time to respond to the rule change at the next school board meeting.

21. When school board member Terry was contacted by plaintiff Fox, he stated that he had voted for dance in the past but caught so much "flak" from the ministers that he would vote against it this time. School board member Keeling stated to Fox that he did not believe in dancing because he was taught it was wrong.

22. Board member Keeling told plaintiff Marlene Mareth that his background disfavored dancing; board member Negre stated his church is opposed to dancing.

23. After the February meeting the Ministerial Alliance met to plan the opposition to changing the rule. The group consists of ministers from the First Baptist, the First Christian, the First Free Will Baptist, the First Assembly of God, and the Macedonia Baptist Churches. There are no Catholic, Lutheran, Presbyterian, Methodist, Jewish or Morman members in the Ministerial Alliance. The members agreed to "get" their church members to attend the March school board meeting to oppose a change in the rule.

24. The First Baptist Church minister, Rev. Winfrey, spoke to his congregation about the upcoming dance issue at the school board. He encouraged the congregation to attend the meeting and oppose the change in the rule to allow dancing. The church congregation has prayed for member Blakely's soul for trying to change the rule in the school.

25. To become a member of the First Assembly of God, a person must agree to be separate from worldliness—which includes dancing. The minister of that congregation, Rev. Dement testified that if a member of his congregation engaged in social dancing he would have no choice but to refer him/her to the Presbyters for counseling. He encouraged his congregation to attend the March meeting and made known his views against dancing.

26. Prior to the March meeting, the minister of the Free Will Baptist Church, Ted Davis, contacted every school board member except Stephens to voice his opposition to school dancing. Davis informed his church that there was a petition to be signed concerning dancing as they left the service the Sunday before the March meeting; he believes and preaches that social dancing is sinful, scripturally prohibited, and possibly satanic. He has discussed this view with church members, has preached against dancing from the pulpit and would have a private counseling session with a member of his congregation who engaged in social dancing.

27. The topic at Sunday school on the Sunday before the Board meeting at the Macedonia Free Will Baptist Church, was the change in the rule. Board member Henderson was present and stated that there would be no dancing as long as he was on the school board and encouraged everyone to go to the meeting to show their opposition to any change in the rule. Later at the church service, Gary Pinnell rose and asked everyone to show their support for the rule. Rev. Neal, a member of the Ministerial Alliance, believes social dancing is inappropriate behavior, has discussed his beliefs with board members Henderson and Negre, and has "mentioned" his belief in church services.

28. The largest crowd ever attended the March 10, 1986 board meeting. At the meeting on the dance issue, a presentation was made by Joan Fox, Rev. Davis and Gary Pinnell. No direct mention was made of religion per se at the meeting; however, the letter from the Ministerial Alliance was read in its entirety. At the end of Rev. Davis' talk, he asked the 250–400 people in attendance to stand in opposition to changing the rule. The overwhelming majority of people stood in opposition to changing the rule. Later in closed session, the Board did not take a formal vote, but left the rule intact.

29. Prior to April 1986, the school premises were rented for various nonschool functions except on Wednesday and Sunday evenings. Wednesday and Sunday are traditional church nights. On April 18, 1986, plaintiff Carolyn Flummerfelt completed an application for the rental of the Purdy Elementary School for an end of the year dance. Superintendent Place referred the request to the school board. The board called a meeting on April 29, 1986 and with

counsel present went into executive closed session. The board suspended their rental policy at that meeting. At a later meeting the board decided not to rent to any outside group—that the school buildings would be used for school purposes only. Since that time, the building and grounds have been used for nonschool softball leagues, pick-up basketball games and an exhibition donkey basketball game.

30. In the past twelve years a "banquet" has been held for juniors and seniors with teachers as chaperones. The place of the banquet has varied, but has often been held on school property. The "prom" is then held off the school grounds (often in neighboring towns) without teacher participation or school funding. A breakfast is often held around 1:00 or 2:00 a.m. at the school. If the "banquet" is held off-campus, teachers chaperone off-campus; the banquet has been held several times in Springfield, which is approximately 60 miles from Purdy.

## CONCLUSIONS OF LAW

Initially, the Court notes the allegation by defendants that the claims of the Purdy R–II High School graduates are moot is without merit. Those students have a claim for nominal damages, attorney's fees and costs which may proceed. Defendants' motion to dismiss Jonathan Clayton, Michael Beagle, George Fox, and Amy Dianne Wolf will be denied. Defendants' motion for partial summary judgment (on Counts II and III) will be denied. It is not necessary to rule on the summary judgment motion in view of the finding in plaintiff's favor on Count I. The Court finds that Robert Mareth, Marlene Mareth and James Beagle do have citizen standing to challenge an establishment clause claim. Furthermore, whether any particular plaintiff has standing does not affect the outcome of this decision.

The Supreme Court has consistently used a three-part test in analyzing whether there is a violation of the establishment clause of the First Amendment to the United States Constitution. *Lemon v. Kurtzman*, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed. 2d 745 (1971). First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion, and third the statute must not foster excessive governmental entanglement with religion. *Id.* at 612–13, 91 S.Ct. at 2111. Excessive entanglement has been further defined as either excessive administrative entanglement or excessive political divisiveness. *Lynch v. Donnelly*, 465 U.S. 668, 104 S.Ct. 1355, 1365, 79 L.Ed.2d 604 (1984). The Supreme Court has not held excessive political divisiveness alone to invalidate otherwise permissible conduct. *Id.*

*Lemon*'s purpose requirement aims at preventing the relevant governmental decisionmaker from abandoning neutrality and acting with the intent of promoting a particular point of view in religious matters. *Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter–Day Saints v. Amos*, —— U.S. ——, 107 S.Ct. 2862, 2868, 97 L.Ed.2d 273 (1987). Defendants argue that dancing in this case is not a religious issue. That assertion has no basis in the evidence presented to this Court.

The Court regards the following statements of the board members as unpersuasive; that no one has ever stated to them that they oppose dancing in the schools for religious reasons; that they have no idea why the community is opposed to dancing in the school; that there was no religious pressure to keep the rule; and that the rental policy was changed in response to problems with liability of the schools. Particularly incredible are board member Henderson's courtroom statements that his vote did not reflect his personal religious feeling nor religious beliefs of the community and his statement that there was no religious significance to the entire hour discussion at Sunday school on the dance issue prior to the March meeting. Likewise, board member Terry's denial of any pressure for church members or ministers and his courtroom statements about no church influence is not believable in view of the contradictory testimony of the subpoenaed Sell, plaintiffs Flummerfelt and Fox, and defendant Place. Board member Negre's

denial of ever hearing religious reasons espoused for not changing the rule is contradicted by his own minister's statement. While it is true that a secular approach may coincide with an approach taken by certain religions and not be inherently religious, the Court finds that the rule prohibiting dancing is inherently religious to the Purdy R–II School Board.

The entire board candidly admits that they followed the will of the majority; but they were not candid in their opinions on the religious reasoning of the majority. The board members were not particularly credible, either in demeanor or in the substance of their testimony. As stated above, it is inconceivable that no one in the Purdy area has ever expressed the view, within the board members' hearing, that dancing is either immoral, sinful or against any religion. It is inconceivable that certain board members were totally unaware that dancing was against the tenets of some Purdy residents' religion. It is equally unbelievable that the board placed no religious significance to a statement given by the ministerial alliance, a group of ministers whose combined ministry included some of the board members. This Court is skeptical that it heard the complete story concerning the board members' deliberations of the rule and the religious significance of the opposition to dancing in Purdy. The school board adopted the reasoning of the "majority" of townspeople, including the strongly-held religious views.

Furthermore, the board's courtroom statements that they accepted the minister's statements at face value defy reality. It is unbelievable that 300–400 people came to the school board meeting to protest the added expense of 1 or 2 dances or the increased responsibility to teachers. The teachers already must chaperone the banquet but leave when the dancing begins. It is particularly significant that no facts were requested of the opponents of the rule to ascertain whether there would be any increased costs or responsibilities. The record is devoid of any indication that the board investigated the reasons propounded by the opponents, despite the fact that the school's superintendent favored rescinding the rule and stated that he could handle any chaperoning problems.

Condemnation of dancing is not firmly rooted in Judeo–Christian moral or ethical standards. Allowing students to engage in dancing within the school building does not conflict with our historical traditions. See, *Bowers v. Hardwick,* 478 U.S. 186, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986); *Marsh v. Chambers,* 463 U.S. 783, 103 S.Ct. 3330, 77 L.Ed.2d 1019 (1983); *Florey v. Sioux Falls School District 49–5,* 619 F.2d 1311 (8th Cir.1980), *cert. denied* 449 U.S. 987, 101 S.Ct. 409, 66 L.Ed.2d 251 (1981). Although the intent of the decisionmakers who promulgated the rule cannot be ascertained, the school board in keeping the rule abandoned neutrality with the intent to promote a particular view in religious matters.

Particularly significant to this Court is the fact that in April a group of parents wanted to rent the school facilities for a school dance. There would be no added cost to the school, no supervision by teachers and no classroom time attributed to extracurricular activities. Yet the school board called an emergency meeting to do away with the entire rental policy rather than allow dancing in the school. It is one thing to be opposed to the school itself sponsoring and paying for an extracurricular activity and quite another to prohibit social dancing on school property. It is clear to the Court that the reasons propounded by the majority were a mere pretext for the real religious reasoning. Thus, there is no valid secular purpose to having Rule 502.29.

Even if the defendants could show a valid secular purpose, the primary effect of this rule is to endorse the tenets of that particular religious group in Purdy who believe that social dancing is sinful. "Endorsement sends a message to nonadherents that they are outsiders, not full members of the political community, and an accompanying message to adherents that they are insiders, favored members of the political community." *Lynch* 104 S.Ct. at 1367 (O'Connor J., concurring). "What is crucial is that a government practice not have the effect of communicating a mes-

sage of government endorsement or disapproval of religion. It is only practices having that effect, whether intentionally or unintentionally, that make religion relevant, in reality or public perception, to status in the political community." *Lynch* at 1369 (O'Connor J., concurring). In the present matter, the school board is placing the state's imprimatur on one particular religious belief. The testimony at trial was that a tenet of the Purdy Assembly of God religion is a separation from worldliness, including dancing. The evidence was that a tenet of the Purdy Free Will Baptist Church is that social dancing is sinful. By prohibiting dancing in the Purdy School, the school board has assumed the role of monitoring adherence to that particular tenet. The religion of every man must be left to his convictions and conscience and it is the right of every man to exercise his religion as his convictions and conscience may dictate. *Wallace v. Jaffree*, 472 U.S. 38, 105 S.Ct. 2479, 2488 n. 38, 86 L.Ed.2d 29 (1985). Church members or non-church members can no longer follow their own convictions and conscience; this religious decision has been made for them.

The inquiry into this kind of effect must be conducted with particular care when many of the citizens perceiving the governmental message are children of formative years. *School District of City of Grand Rapids v. Ball*, 473 U.S. 373, 105 S.Ct. 3216, 3226, 87 L.Ed.2d 267 (1985). That a child is offered an alternative may reduce the constraint; it does not eliminate the operation of influence by the school in matters sacred to conscience and outside the school's domain. *Wallace* 105 S.Ct. at 2492 n. 51 [quoting *Illinois, ex rel. McCollum v. Bd. of Education*, 333 U.S. 203, 227, 68 S.Ct. 461, 473, 92 L.Ed. 649 (1948) (Frankfurter, J., concurring)]. The right to dance may not be a tenet of the Methodist, Catholic, Lutheran or Mormon Church, but the children of these faiths cannot be made to feel that their religions are inferior because their churches do not prohibit (and in some cases, actually sponsor) dances. The public stamp of approval cannot be placed on one faith—even if it is the majority in that particular school system. It is no defense

to urge that the religious practices here may be relatively minor encroachments on the First Amendment (citations omitted). *Stone v. Graham*, 449 U.S. 39, 42, 101 S.Ct. 192, 194, 66 L.Ed.2d 199 (1980). The administration of religious training is properly in the domain of the family and church. *Florey, supra* at 1318. The First Amendment prohibits public schools from serving that function. The primary effect of Rule 502.29 is to advance the religious beliefs of a particular religion.

The third prong set out in *Lynch* is whether there is excessive administrative or political entanglement. There is no question that the dance issue is deeply divisive in the Purdy area, nor is there any question that it has been a divisive issue for many years. The elaborate steps the school system took to ensure that dancing would not occur included having a junior/senior banquet at the school with teacher chaperones, adjourning to separate facilities for dancers and non-dancers, and then a parent-sponsored breakfast at 1:00 or 2:00 a.m. Special steps were taken so that banquet decorations would not be used as dance decorations. Money raised by having a dance could not be used by the Purdy High School classes for the class trip. The excessive caution surrounding anything connected with dancing undermines any assertion of a secular purpose, but it also suggests the extreme divisiveness of this issue. Religious groups of course have an absolute right to make their views known and to participate in public discussion of issues. The ministers who participated in this public debate can in no way be criticized by the state for that participation; however, those views may not prevail if they conflict with the constitutional mandate forbidding the establishment of a religion. Rule 502.29 of the Purdy R–II School District violates the Establishment Clause of the First Amendment to the United States Constitution because the prohibition against dancing in a public school has no secular purpose, advances the tenets of one group of religion, and is politically divisive.

It would be inappropriate for this Court to order the district to sponsor school dances; however, a district rule prohibiting students from holding dances on school property infringes on the First Amendment rights of the students and must be invalidated. Accordingly, it is

ORDERED that School Board Policy Rule 502.29 of the Purdy R–II School District is unconstitutional; and it is further

ORDERED that the School Board is enjoined from enforcing Rule 502.29; and it is further

ORDERED that plaintiffs are awarded nominal damages in the amount of $1.00 to each of them plus reasonable attorney's fees; and it is further

ORDERED that the Clerk shall refrain from entering final judgment until a hearing can be held on attorney's fees; and it is further

ORDERED that a hearing on the attorney's fees issue is set for Friday, September 2, 1988 at 9:00 a.m.