Jonathan CLAYTON, a minor, by Connie CLAYTON, his next friend; Steve Blakley, a minor, by Tressia Blakley, his next friend; David Mareth, a minor, by Marlene Mareth, his next friend; Mark Flummerfelt, a minor, by Carolyn Flummerfelt, his next friend; Michael Beagle, a minor, by James M. Beagle, his next friend; George Fox, a minor, by Joan Fox, his next friend; Amy Dianne Wolf, a minor, by Frances Ann Wolf, her next friend; Anna Svetlecic, a minor, by Vickie Svetlecic, her next friend; Connie Clayton; Tressia Blakley; Vickie Svetlecic; Walter Welch; Sherry Welch; Robert Mareth; Marlene Mareth; Michael Flummerfelt; Carolyn Flummerfelt; Frances Ann Wolf; Joan Fox; Howard Fox, Jr.; and James M. Beagle, Appellees,

v.

Richard M. PLACE; Glen Garrett; Rex Henderson; Allen Keeling; Art Negre; Jacqueline L. Stephens; Jim Terry; All in their individual and official capacities and Purdy R–2 School District, Appellants.

No. 88–2493.

United States Court of Appeals, Eighth Circuit.

Submitted April 10, 1989.

Decided Sept. 1, 1989.

Rehearing and Rehearing En Banc Denied Nov. 17, 1989.

Ransom A. Ellis, III, Ransom A. Ellis, Jr. and Rick E. Temple, and Carl H. Esbeck, Professor of Law, Mo. University, Springfield, Mo., for appellants.

Larry W. Schumaker, Kansas City, Mo., and William J. Fleischaker, Joplin, Mo., for appellees.

Before FAGG, Circuit Judge, FLOYD R. GIBSON, and TIMBERS,* Senior Circuit Judges.

FAGG, Circuit Judge.

Rule 502.29 of the Purdy R–2 School District provides in part: "School dances are not authorized[,] and school premises shall not be used for purposes of conducting a dance." Although the record does not indicate when the rule was enacted, the parties agree it has been in place for a long time. A group of students, parents, and taxpayers (collectively plaintiffs) brought this action against the Purdy R–2 School District, its Superintendent, and members of the District's Board of Education (collectively the District), seeking to set aside the no-dancing rule. Among other theories, plaintiffs asserted the rule violates the establishment clause of the first amendment because it advances the views of residents in the Purdy District who oppose dancing

---

\* The HONORABLE WILLIAM H. TIMBERS, Senior United States Circuit Judge for the United States Court of Appeals for the Second Circuit, sitting by designation.

on religious grounds. *See Lemon v. Kurtzman,* 403 U.S. 602, 612–13, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971). The district court agreed and invalidated the rule on that basis. *See Clayton v. Place,* 690 F.Supp. 850, 854–57 (W.D.Mo.1988). The District now appeals, and we reverse.

Purdy is a small, primarily rural community in southwestern Missouri. The record indicates religion is an important force in Purdy, and particular churches are staunchly opposed to social dancing. A tenet of one denomination in Purdy specifically requires "a separation from worldliness, including dancing," *id.* at 856, and another teaches "social dancing is sinful," *id.* Over the years, various groups have unsuccessfully sought permission for school dances and have proposed changing the District's no-dancing rule. Despite their lack of success, however, Purdy students are not prohibited from holding dances away from school property, and they have regularly done so.

In February 1988, a group seeking reconsideration of rule 502.29 to enable a newly formed student organization to sponsor a dance at the high school appeared before the Board of Education (the Board). A local minister who opposed changing the rule attended the meeting and requested a place on the Board's March agenda to make a presentation on the subject. Following discussion, the Board deferred action on the issue until the March meeting.

In the interim, it is fair to say the Purdy religious community actively discussed the dancing issue. A group of local ministers met to plan how to express their support for the rule. Ministers of several local churches, including some to which Board members belong, spoke out during church services against changing the rule and encouraged members of their congregations to attend the March Board meeting and show their opposition as well.

A large crowd gathered for the March Board meeting. Although "[n]o direct mention was made of religion per se at the meeting," *id.* at 853, the minister who had attended the February meeting spoke against changing the rule and read a letter from the ministerial group to the same effect. When the minister finished his presentation, he took the opportunity to ask those in the audience who opposed changing the no-dancing rule to stand. Of the estimated 250–400 people in attendance, an "overwhelming majority of people stood in opposition to changing the rule." *Id.*

The Board later went into closed session to discuss the students' reconsideration request. Although no formal vote was taken, the Board agreed unanimously to "le[ave] the rule intact." *Id.* Plaintiffs then brought this action, contending the rule violated: (1) the freedom of association clause of the first amendment; (2) the freedom of speech clause of the first amendment; (3) the establishment clause of the first amendment; and (4) article I, section 7 of the Missouri Constitution. The court rejected plaintiffs' freedom of association and speech challenges, but held that the rule violated the establishment clause of the federal constitution. In addition, the court held that for the same factual reasons given in connection with its establishment clause ruling, the District's no-dancing rule violated the Missouri Constitution. *See Clayton v. Place,* No. 86–5184–CV–SW–4, slip op. at 1–2 (Aug. 30, 1988) (unpublished order); 690 F.Supp. at 851, 856. On appeal, the District challenges only the court's rulings pertaining to the establishment clause and to the Missouri Constitution.

◼ In considering the district court's ruling that the Purdy no-dancing rule is invalid under *Lemon,* we review the court's findings of fact under the clearly erroneous standard. *See Carter v. Broadlawns Medical Center,* 857 F.2d 448, 453 (8th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1569, 103 L.Ed.2d 935 (1989). The ultimate conclusion of the rule's constitutionality, however, is a mixed question of law and fact. *See id.* Although the record contains no indication of when or for what express purpose the rule was originally passed, that circumstance is no barrier to evaluating the rule's compliance with the establishment clause. *See Mueller v. Allen,* 463 U.S. 388, 395 n. 4, 103 S.Ct. 3062,

3067 n. 4, 77 L.Ed.2d 721 (1983). The district court's opinion does not rest on any adverse factual findings bearing directly on the content of rule 502.29 or on the circumstances surrounding its original passage. Nevertheless, the plaintiffs have framed their action as one to set aside the rule, and we thus turn to examine the rule itself.

■ The Supreme Court has consistently followed the three-part *Lemon* test for determining whether a challenged governmental rule offends the establishment clause, and the parties agree the *Lemon* analysis applies in this case. Under the *Lemon* framework, a rule is permissible if it has a secular purpose; if it neither advances nor inhibits religion in its principal or primary effect; and if it does not foster an excessive entanglement with religion. *County of Allegheny v. ACLU*, — U.S. ——, 109 S.Ct. 3086, 3100, 106 L.Ed.2d 472 (1989). The challenged rule is valid only if it meets all three tests. *See Edwards v. Aguillard*, 482 U.S. 578, 583, 107 S.Ct. 2573, 2577, 96 L.Ed.2d 510 (1987). The district court determined the Purdy no-dancing rule violated each of these three requirements and was thus invalid. We disagree as to each.

First, plaintiffs conceded at oral argument (and the district court acknowledged) that extracurricular dancing is a wholly secular activity. *See* 690 F.Supp. at 855 ("Condemnation of dancing is not firmly rooted in Judeo–Christian moral or ethical standards."). Further, the rule carries within its text absolutely no religious component, and there is no record evidence of any actual religious purpose connected with the rule's enactment or its textual requirements. *Compare Wallace v. Jaffree*, 472 U.S. 38, 56–57, 105 S.Ct. 2479, 2489–90, 86 L.Ed.2d 29 (1985). In our view, the rule on its face thus satisfies the first prong of the *Lemon* analysis. *See Bowen v. Kendrick*, — U.S. ——, 108 S.Ct. 2562, 2570–71, 101 L.Ed.2d 520 (1988); *Mueller*, 463 U.S. at 394–95, 103 S.Ct. at 3066–67; *see also Florey v. Sioux Falls School Dist.*, 619 F.2d 1311, 1314–15 (8th Cir.), *cert. denied*, 449 U.S. 987, 101 S.Ct. 409, 66 L.Ed.2d 251 (1980).

Second, the record does not fairly demonstrate that any religious doctrine is principally or primarily advanced by the Board's enforcement of the no-dancing rule. *See Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter–Day Saints v. Amos*, 483 U.S. 327, 337, 107 S.Ct. 2862, 2869, 97 L.Ed.2d 273 (1987) (*Amos*). No student is prohibited from engaging in or refraining from extracurricular dancing should they choose to do so. Any arguably religious effect of the rule is indirect, remote, and incidental. *Lynch v. Donnelly*, 465 U.S. 668, 683, 104 S.Ct. 1355, 1364, 79 L.Ed.2d 604 (1984); *see also Bowen*, 108 S.Ct. at 2573. To the extent plaintiffs contend the rule impermissibly endorses or conveys a message of governmental preference for a particular religious viewpoint concerning social dancing, *see County of Allegheny*, 109 S.Ct. at 3101; *Bowen*, 108 S.Ct. at 2571, we find nothing in the rule to suggest the District has "take[n] a position on questions of religious belief or * * * 'ma[de] adherence to a religion relevant in any way to a person's standing in the political community.'" *County of Allegheny*, 109 S.Ct. at 3101 (quoted citation omitted).

■ Finally, there is no showing the rule fosters excessive government entanglement in religious affairs. If anything, the rule promotes less, rather than more, school involvement in what plaintiffs contend is a religiously significant activity. *See Amos*, 483 U.S. at 339, 107 S.Ct. at 2870. The district court based this portion of its decision on the conclusion that the dancing debate was deeply divisive in the Purdy community. *See* 690 F.Supp. at 856. Political divisiveness along religious lines, however, is not a proper consideration except in cases involving financial aid to parochial schools. *See Bowen*, 108 S.Ct. at 2578 & n. 14; *Mueller*, 463 U.S. at 403 n. 11, 103 S.Ct. at 3071 n. 11; *Carter*, 857 F.2d at 456; *Florey*, 619 F.2d at 1318. For these reasons, we conclude the District's no-dancing rule on its face satisfies the controlling *Lemon* standards. We turn now to the core of plaintiffs' additional argument challenging the rule.

Plaintiffs contend Board members acted in accordance with the religious beliefs of a majority of patrons attending the March Board meeting and in conformity with their own faiths when they acted to retain the no-dancing rule. Based on this premise, plaintiffs argue the Board's action was religiously motivated and, consequently, should result in nullification of the rule as a violation of the establishment clause. We reject this argument.

Although the record does not indicate the religious affiliation of patrons who stood in support of the rule at the March meeting, the district court held the Board had "adopted the reasoning of the 'majority' of townspeople, including the[ir] strongly-held religious views," 690 F.Supp. at 855. The court then determined "the rule prohibiting dancing [was] inherently religious to the [Board]," and "there [was] no valid secular purpose to having [r]ule 502.29," *id.* For this reason, the court concluded the Board's action violated *Lemon's* purpose requirement because the Board "in keeping the rule abandoned neutrality with the intent to promote a particular view in religious matters." *Id.* Utilizing what amounts to the same rationale, the district court also held the rule ran afoul of *Lemon's* effect standard because it had "the primary effect of * * * endors[ing] the tenets of that particular religious group in Purdy who believe[s] that social dancing is sinful," *id.; see also id.* at 855–56.

Initially, we observe the district court found a number of the Board members had at some time expressed the view that their individual religious backgrounds favored the rule. *See id.* at 852–53. In addition, the court found that to the extent Board members testified moral, educational, or fiscal concerns, and not religion, influenced their decisions, their testimony was not credible. *See id.* at 854–55. While we have no occasion to disagree with these findings, we believe plaintiffs' and the district court's reliance on them in this case is misplaced.

We readily acknowledge that under the record in this case, the no-dancing rule may be characterized as compatible with the sincerely held religious beliefs of a vocal segment of the Purdy community. The mere fact a governmental body takes action that coincides with the principles or desires of a particular religious group, however, does not transform the action into an impermissible establishment of religion. *See Bowen,* 108 S.Ct. at 2571 n. 8; *Lynch,* 465 U.S. at 682, 104 S.Ct. at 1363; *Harris v. McRae,* 448 U.S. 297, 319–20, 100 S.Ct. 2671, 2689, 65 L.Ed.2d 784 (1980); *see also Webster v. Reproductive Health Servs.,* —— U.S. ——, 109 S.Ct. 3040, 3082, 106 L.Ed.2d 410 (1989) (Stevens, J., concurring and dissenting).

We also find no support for the proposition that a rule, which otherwise conforms with *Lemon,* becomes unconstitutional due only to its harmony with the religious preferences of constituents or with the personal preferences of the officials taking action. *Cf. Washington v. Davis,* 426 U.S. 229, 253, 96 S.Ct. 2040, 2054, 48 L.Ed.2d 597 (1976) (Stevens, J., concurring) ("It is unrealistic * * * to invalidate otherwise legitimate action simply because an improper motive affected the deliberation of a participant in the decisional process."). To make government action assailable solely on the grounds plaintiffs suggest would destabilize governmental action that is otherwise neutral. Indeed, the focus of *Lemon* is to avoid a haphazard approach "for determining whether a government practice violates the [e]stablishment [c]lause." *County of Allegheny,* 109 S.Ct. at 3100.

We simply do not believe elected government officials are required to check at the door whatever religious background (or lack of it) they carry with them before they act on rules that are otherwise unobjectionable under the controlling *Lemon* standards. In addition to its unrealistic nature, this approach to constitutional analysis would have the effect of disenfranchising religious groups when they succeed in influencing secular decisions. In this case, the district court recognized "[r]eligious groups * * * have an absolute right to make their views known and to participate in public discussion of issues,"

690 F.Supp. at 856. Nevertheless, the court held "those views may not prevail," *id.*, even though these groups have long been legitimate participants in secular community debate, *see Bowen*, 108 S.Ct. at 2573.

At bottom, the proper remedy for plaintiffs' disenchantment with a Board that refused to change a rule that is compatible with *Lemon* is found at the ballot box and not in the Constitution. Having carefully studied the applicable authorities, the record, and the parties' arguments, we hold the District's no-dancing rule is not an unconstitutional establishment of religion under the first amendment.

■ We now turn to plaintiffs' argument that the rule violates article I, section 7 of the Missouri Constitution. The district court treated the relevant state constitutional provision as coextensive with the federal establishment clause for purposes of plaintiffs' action, and we adopt that construction as well. *See Goodwin v. Circuit Court*, 741 F.2d 1087, 1089 (8th Cir.), *cert. denied*, 469 U.S. 1216, 105 S.Ct. 1194, 84 L.Ed.2d 339 (1984) ("We normally defer to the district courts on questions of the law of their own states, and this principle applies to state constitutions * * *."). In view of our decision on the federal constitutional principles, we necessarily conclude the District's rule does not infringe the state constitutional section challenged here. Accordingly, we reverse the district court's ruling on this issue.

In sum, we reverse the district court's challenged rulings and remand the case for proceedings consistent with this opinion, including reconsideration of the court's order awarding attorneys fees and expenses.