Chief Justice Rehnquist,
with whom Justice Scalia and Justice Thomas join,
dissenting.
Since 1958, a 6-foot granite monument inscribed with the Ten Commandments has stood in front of the city of Elkhart's Munici *1060 pal Building, on the northeast corner of a lawn shared with two commemorative structures. The specific text was developed by representatives of the Jewish, Catholic, and Protestant faiths who sought to create a nonseetarian version of the Commandments. In addition to the text, the monument depicts an eye within a pyramid similar to the one displayed on the one-dollar bill, an American eagle grasping the American flag, two small Stars of David, and a similarly sized symbol representing Christ: two Greek letters, Chi and Rho, superimposed on each other.
A juvenile court judge, seeking to provide troubled youth with a common code of conduct, was the original impetus behind the project. The Fraternal Order of Eagles, a service organization “dedicated to promoting liberty, truth, and justice,” financed the monument, and although it stands on public property, the city contributes no time, effort, or money to its maintenance. 235 F. 3d 292, 294-295 (CA7 2000). In a recent resolution, responding to a request that the monument be removed and to threat of litigation, the Elkhart Common Council recognized that the Ten Commandments “ ‘reflec[t] one of the earliest codes of human conduct.’” Id., at 297. The resolution stated that the monument’s symbols represent the “ ‘cross cultural and historical significance’ ” of the Commandments, which have had a “ ‘significant impact on the development of the fundamental legal principles of Western Civilization.’” Id., at 312, n. 1 (opinion concurring in part and dissenting in part). It also noted that Elkhart’s Municipal Building is home to numerous other historical and cultural objects. Ibid.
Nonetheless, in 1998, 40 years after the monument’s erection, respondents, residents of Elkhart County, filed suit against the city under Rev. Stat. § 1979, 42 U. S. C. § 1983, alleging that the monument’s presence violated the Establishment Clause. The District Court granted summary judgment for the city, and a divided panel of the Court of Appeals for the Seventh Circuit reversed.
That court, applying the oft-critidzed framework set out in Lemon v. Kurtzman, 403 U.S. 602 (1971), first considered whether the dty’s display of the monument had a secular purpose. The court found that it did not. 235 F. 3d, at 301 (citing Lemon, supra, at 612-613). The court relied in part on Stone v. Graham, 449 U. S. 39 (1980) (per curiam), where we struck *1061 down a state statute requiring the posting of the Ten Commandments in public schoolrooms, on the ground that the statute had no secular purpose. Stone's finding of an impermissible purpose is hardly controlling here. In Stone, the posting effectively induced schoolchildren to meditate upon the Commandments during the sehoolday. Id., at 42. We have been “particularly vigilant” in monitoring compliance with the Establishment Clause in that context, where the State exerts “great authority and coercive power” over students through mandatory attendance requirements. Edwards v. Aguillard, 482 U.S. 578, 583-584 (1987); County of Allegheny v. American Civil Liberties Union, Greater Pittsburgh Chapter, 492 U.S. 573, 620, n. 69 (1989). Those concerns are absent here, where the Ten Commandments monument stands outside the city’s Municipal Building.
Stone’s unique setting may explain our reluctance to accept in that case the State’s view that its display of the Commandments had a secular purpose. But we have never determined, in Stone or elsewhere, that the Commandments lack a secular application. To be sure, the Ten Commandments are a “sacred text in the Jewish and Christian faiths,” concerning, in part, “the religious duties of believers.” 449 U. S., at 41-42. Undeniably, however, the Commandments have secular significance as well, because they have made a substantial contribution to our secular legal codes. Even Stone noted that “integrated into the school curriculum” the Commandments “may constitutionally be used in an appropriate study of history, civilization, [or] ethics.” Id., at 42. And as the Court of Appeals recognized, “[t]he text of the Ten Commandments no doubt has played a role in the secular development of our society and can no doubt be presented by the government as playing such a role in our civic order.” 235 P. 3d, at 302.
The council’s resolution stated the city’s intent to display the Commandments in precisely that way — -to reflect their cultural, historical, and legal significance. We are “normally deferential” to “artieulation[s] of a secular purpose,” so long as they are “sincere and not a sham.” Aguillard, supra, at 586-587. There is no evidence of insincerity here, and thus no justification for the Court of Appeals’ refusal to credit the city’s stated purpose. That the city only recently articulated its aims for displaying the monument is of no moment, for it is only recently in its *1062 40-year history that the monument has come under attack. That the monument bears religious symbols as well as secular ones, and that speeches by religious leaders accompanied its dedication, do not alter the analysis. Even assuming that these aspects of the monument’s appearance and history indicate that it has some religious meaning, the city is not bound to display only symbols that are wholly secular, or to convey solely secular messages. In determining whether a secular purpose exists, we have simply required that the displays not be “motivated wholly by religious considerations.” Lynch v. Donnelly, 465 U.S. 668, 680 (1984). The fact that the monument conveys some religious meaning does not cast doubt on the city’s valid secular purposes for its display.
Turning to the second prong of Lemon, the Court of Appeals concluded that “[e]ven if we were to ignore the primary purpose behind displaying the Ten Commandments monument, we would have to conclude that this particular display has the primary or principal effect of advancing religion.” 235 F. 3d, at 304 (citing Allegheny, supra, at 592). In Allegheny, and in Lynch, we recognized the importance of context in evaluating whether displays of symbols with religious meaning send an “unmistakable message” of government support for, or endorsement of, religion. Allegheny, supra, at 598-600; Lynch, supra, at 680.
Considering the Ten Commandments monument in the context in which it appears, it sends no such message. The city has displayed the monument outside the Municipal Building, which houses the local courts and local prosecutor’s office. This location emphasizes the foundational role of the Ten Commandments in secular, legal matters. Indeed, a carving of Moses holding the Ten Commandments, surrounded by representations of other historical legal figures, adorns the frieze on the south wall of our courtroom, and we have said that the carving “signals respect not for great proselytizers but for great lawgivers.” Allegheny, supra, at 652-653 (Stevens, J., concurring in part and dissenting in part). Similarly, the Ten Commandments monument and the surrounding structures convey that the monument is part of the city’s celebration of its cultural and historical roots, not a promotion of religious faith. To that end, the monument shares the lawn outside the Municipal Building with the Revolutionary War Monument, which honors the Revolutionary War soldiers buried in Elkhart County, and a structure called *1063 the “Freedom Monument.” 235 F. 3d, at 296. Above the entrance to the building is a bas-relief of an Elk’s head, and the words “DEDICATUM JUSTITIAM.” Id, at 295. Considered in that setting, the monument does not express the city’s preference for particular religions or religious belief in general. It simply reflects the Ten Commandments’ role in the development of our legal system, just as the war memorial and Freedom Monument reflect the history and culture of the city of Elkhart. Perhaps that is why, for four decades, no person has challenged the monument as an unconstitutional endorsement of religion.
I would grant certiorari to decide whether a monument which has stood for more than 40 years, and has at least as much civic significance as it does religious, must be physically removed from its place in front of the city’s Municipal Building.