**ACLU NEBRASKA FOUNDATION and John Doe, Plaintiffs,**

v.

**CITY OF PLATTSMOUTH, NEBRASKA, Defendant.**

**No. 4:01CV3109.**

United States District Court, D. Nebraska.

Feb. 19, 2002.

Amy A. Miller, Amer. Civ. Liberties Union, Lincoln, NE, Sue Ellen T. Wall, Wall Law Office, Lincoln, NE, for plaintiffs.

Francis Manion, Amer. Center for Law and Justice, New Hope, KY, Jefferson Downing, Keating, O'Gara Law Firm, Lincoln, NE, for defendant.

## MEMORANDUM AND ORDER

KOPF, District Judge.

This matter is before the court upon cross motions for summary judgment (filings 28 and 32). The issue is whether a city's display of a monument bearing the text of the Ten Commandments in a public park violates the Constitution.

The Establishment Clause of the First Amendment prohibits laws "respecting an establishment of religion." U.S. CONST. amend. I. This prohibition is applicable to the States and local governments through the Fourteenth Amendment. *Abington School District v. Schempp*, 374 U.S. 203, 215–216, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963).

In this case, the "Ten Commandments" monument was donated to the City by the Eagles. While not addressed by the Supreme Court or the Eighth Circuit, the Seventh Circuit, Tenth Circuit and Colorado state supreme court have ruled on the constitutionality of the display of Eagles-donated Ten Commandments monuments

on public property. These decisions are in conflict, and two produced dissenting opinions. *See, e.g., Books v. City of Elkhart,* 235 F.3d 292 (7th Cir.2000) (finding display of the monument unconstitutional, with dissenting opinion), *cert. denied,* 532 U.S. 1058, 121 S.Ct. 2209, 149 L.Ed.2d 1036 (2001) (sharp exchange of views from the three members of the Supreme Court who would have granted the city's petition for certiorari and Justice Stevens who concurred in the denial of the petition); *Anderson v. Salt Lake City Corp.,* 475 F.2d 29 (10th Cir.) (upholding the display of the monument), *cert. denied,* 414 U.S. 879, 94 S.Ct. 50, 38 L.Ed.2d 124 (1973); *State v. Freedom From Religion Found., Inc.,* 898 P.2d 1013 (Colo.1995) (upholding display of monument on capital complex grounds containing many other monuments, with three judges dissenting), *cert. denied,* 516 U.S. 1111, 116 S.Ct. 909, 133 L.Ed.2d 841 (1996).

The Tenth Circuit's opinion in *Anderson* was issued in 1973 before the Supreme Court spoke about the Ten Commandments and public schools in *Stone v. Graham,* 449 U.S. 39, 101 S.Ct. 192, 66 L.Ed.2d 199 (1980). It is therefore of dubious value. The facts of the Colorado Supreme Court's decision in *Freedom From Religion Found., Inc.,* are very different than the facts of this case. Therefore, as discussed later, there are important constitutional reasons for not applying the Colorado case to the facts of this one.

On the other hand, the *Books* opinion is not without articulate critics. In addition to the Justices who would have granted certiorari, *City of Elkhart v. Books,* 532 U.S. 1058, 121 S.Ct. 2209, 2210–2212, 149 L.Ed.2d 1036 (2001), *Books* has been attacked for promoting nonreligious beliefs over religion. Trisha A. Vicario, *Religious Monuments Under Attack: Undermining Religion for the Benefit of the Irreligious in Books v. City of Elkhart,* 235 F.3d 292 (7th Cir.2000), 25 Hamline L.Rev. 151 (2001).

That thoughtful criticism notwithstanding, the *Books* opinion, recently issued in a closely analogous factual situation, honestly states and correctly applies the most recent precedents of the Supreme Court. Absent specific guidance from the Supreme Court and my own Court of Appeals on the question of the Ten Commandments displayed as a monument, *Books* is the next best thinking on the subject.

Following *Books,* I find the City's display of an Eagles-donated monument bearing the text of the Ten Commandments in a public park violates the Establishment Clause of the First Amendment. Therefore, I will grant the plaintiffs' motion for summary judgment.

## I. BACKGROUND

Defendant does not dispute the primary facts submitted by Plaintiffs. (Def.'s Br. at 2 n. 1) (noting that Defendant contests only 4 of the 43 paragraphs in the Statement of Facts submitted in Plaintiffs' brief) (for reasons explained later, I overrule Defendant's objections to these four paragraphs). Plaintiffs agree that there are no factual issues to be resolved at trial. (Pls.' Reply Br. at 1.) In a January 16, 2002, telephone conference call with counsel for the parties, all counsel confirmed that there are no material facts in dispute and that this case should be resolved on summary judgment. These, then, are the material undisputed facts.[1]

---

1. The facts are derived from one of three sources: Filing 41, Order on Final Pretrial Conference ("Pretrial Order"); Filing 29, Pls.' Index of E. in Supp. of Mot. for Summ. J. ("Pls.' Evid."); and Filing 33, Def.'s Index of E. in Supp. of Cross Mot. for Summ. J. ("Def.'s Evid.").

*John Doe*

1. Plaintiff John Doe is a resident of Plattsmouth, Nebraska. (Pretrial Order ¶ B.1.)

2. Doe is a member of the organizational Plaintiff, ACLU Nebraska. (Pretrial Order ¶ B.2.)

*Installation and Ownership of Monument*

3. The Ten Commandments monument which is the subject of this action belongs to the City of Plattsmouth. (Pretrial Order ¶ B.3.) In 1966, the monument was given to the City of Plattsmouth by the Fraternal Order of Eagles and erected in Memorial Park. (Pls.' Evid., Ex. 8 [resp. to req. 1].) Memorial Park is a public park located on land owned by the City of Plattsmouth. (Pretrial Order ¶ B.4.)

4. Then Street Commissioner Art Hellwig and other city employees helped erect the monument. (Pls.' Ex. 11.) Hellwig was at the time an officer of the Eagles, and it is not known whether he helped erect the monument in his capacity as Street Commissioner or as an Eagles officer. (Pls.' Evid., Ex. 8 [resp. to req. 2].)

5. The monument was installed in Memorial Park with the permission of Defendant City of Plattsmouth. (Pls.' Evid., Ex. 8 [resp. to req. 1].) Permanent markers may not be placed by private persons or organizations in Memorial Park without permission of the City. (Pls.' Evid., Ex. 8 [resp. to req. 5].)

6. The city has no formal policy regarding the acceptance of memorials, structures, or monuments for placement in city parks. It makes these decisions on a case-by-case basis. (Def.'s Evid., Winkler Aff. ¶ 13.)

7. The City has the authority to remove the monument and has recently decided not to do so. (Pls.' Evid., Ex. 7.)

*Site of Monument*

8. Memorial Park is the largest park in Plattsmouth. It is at least ten blocks from the city hall. (Def.'s Evid., Winkler Aff. ¶ 3 & Ex. A to Winkler Aff.)

9. Memorial Park contains a variety of recreational equipment, including picnic tables, a baseball diamond, and playground equipment for children. (Pretrial Order ¶ B.8.)

10. The Ten Commandments monument is visible to foot and vehicle traffic on Fourth Avenue in Plattsmouth, Nebraska. (Pretrial Order ¶ B.7.) The monument stands a short distance from a fence which separates private property and Memorial Park, (Pls.' Evid., Ex. 4.), and is located immediately in front of a recreational area which includes a barbeque grill, benches, picnic tables, and a permanent shelter. (Pls.' Evid., Ex. 3).

11. A large plaque containing the names of all donors to the park is located near the entrance to Memorial Park. (Def.'s Evid., Winkler Aff. ¶ 11 and Ex. H.) In addition, some donated items (such as the picnic pavilion and grill) bear plaques identifying their donors. (Pretrial Order ¶ B.9; Def.'s Evid., Exs. D–G of Winkler Aff.)

12. Other than the Ten Commandments monument, no statues or monuments of artistic, cultural, religious, historic, or legal merit are visible within the immediate vicinity of the Ten Commandments monument. (Pretrial Order ¶ B.6; Pls.' Ex. 8, ¶ 6.)

*Appearance of the Monument*

13. The monument is a large granite stone installed on a concrete slab. It appears to be four and a half to five feet tall and two and a half to three feet wide. (Def.'s Evid., Ex. B to Winkler Aff.) Overall, the monument is in the shape of two attached tablets. From a distance, it appears to be a headstone for a grave.

14. The top portion of the monument contains two small tablets inscribed with ancient Hebrew script. Between the tables is an eye within a pyramid (the "all-seeing eye").[2] An eagle gripping an American flag is immediately below the eye. (Pls.' Evid., Ex. 1; Def.'s Evid., Ex. N to Winkler Aff.)

15. The center and predominate section of the monument is inscribed with the following text:

the Ten Commandments

I AM the LORD thy God.

Thou shalt have no other gods before me.
Thou shalt not make to thyself any graven image.
Thou shalt not take the Name of the Lord thy God in vain.
Remember the Sabbath day to keep it holy.
Honor thy father and thy mother that thy days may be long upon the land which the Lord thy God giveth thee.
Thou shalt not kill.
Thou shalt not commit adultery.
Thou shalt not steal.
Thou shalt not bear false witness against thy neighbor.
Thou shalt not covet thy neighbor's house.
Thou shalt not covet thy neighbor's wife nor his manservant nor his maidservant, nor his cattle nor anything that is thy neighbor's.

(Pls.' Evid., Ex. 1; Def.'s Evid., Ex. N.) The first two lines appear in significantly larger font than the remainder. (*Id.*)[3]

16. Below the text, the bottom portion of the monument depicts two Stars of David. (Pls.' Evid., Ex. 1; Def.'s Evid., Ex. N to Winkler Aff.). The Star of David is a symbol of the Jewish religion. (Pls.' Evid., Ex. 8 [resp. to req. 9].) In the center of the two stars is a similarly sized symbol for Christ: the intertwined Greek letters "Chi" and "Rho." (Ex. # 1; Pls.' Evid., Ex. 8 [resp. to req. 10].) The bottom of the monument is also inscribed with a scroll bearing the following text: "PRESENTED TO THE CITY OF PLATTSMOUTH NEBRASKA BY FRATERNAL ORDER OF EAGLES PLATTSMOUTH AERIE NO. 365–1965." (Def.'s Evid., Ex. O to Winkler Aff.)

*Doe's Contact With And Avoidance Of The Monument*

17. Plaintiff Doe lives near the monument and drives by it frequently in his regular course of travel. (Pls.' Evid., Ex. 5 ¶¶ 3,5.) Plaintiff Doe cannot avoid seeing the monument at these times as it is visible from the road. (Pls.' Evid., Ex. 5 ¶ 5 & Ex. 8 [resp. to req. 12].) Although the monument is visible from the adjacent street, the wording on the monument cannot be read from the street. (Def.'s Evid., Winkler Aff. ¶ 4.)

18. Doe is a principled and professed atheist; he does not hold the religious beliefs expressed by the monument, and many are directly contrary to his beliefs. (Pls.' Evid., Ex. 5 ¶ 8.)

19. Plaintiff Doe uses the park for a variety of activities and participates in regularly scheduled events held at the park. Doe asserts that he comes into unwelcome contact with the monument during the course of these regularly scheduled events.[4] (Pls.' Evid., Ex. 5 ¶ 6.)

---

**2.** It is similar to that on the ten-dollar bill.

**3.** A photograph of the monument (an enlarged copy of Def.'s Evid., Ex. N to Winkler Aff.) is attached as an appendix to this opinion.

**4.** Defendant wrongly asserts that this is a legal conclusion, in part because no citizen of Plattsmouth is forced to read, meditate upon or obey any of the text on the monument. (Def.'s Br. at 2 n. 1, 5, 8.) Defendant may find it implausible that Doe's contact with the

20. Because of the monument's presence, Doe avoids using the park except when he has a regularly scheduled event requiring his presence. Doe would use the park on other occasions if not for the monument's presence. Even when he is present at the park for a regularly scheduled event, Doe does not enjoy the full use of the park and its recreation facilities because of the monument. (Pls.' Evid., Ex. 5 ¶ 7.)

### ACLU Nebraska Foundation

21. Plaintiff John Doe is a donor to and member of Plaintiff ACLU Nebraska Foundation. (Pls.' Evid., Ex. 6 ¶ 2 & Ex. 5 ¶ 11.)

22. Plaintiff ACLU Nebraska Foundation is a membership organization whose purpose is defending citizens' constitutional rights. (Pls.' Evid., Ex. 6 ¶ 3.) It has over 800 members in Nebraska, including twelve in Cass County, where Plattsmouth is located. (Pls.' Evid., Ex. 6 ¶ 4.) Its members hold a wide range of religious beliefs. (Pls.' Evid., Ex. 6 ¶ 5.) Some of those members come into direct and unwelcome contact with the monument and are deeply offended by it. (Pls.' Evid., Ex. 6, ¶¶ 7,9.) [5]

23. ACLU Nebraska Foundation is a plaintiff in this action to assert the interests of their local members, including John Doe. (Pls.' Evid, Ex. 6 ¶ 3.)

monument is unwelcome or that he regularly visits the park, but Doe has submitted an affidavit stating that he regularly uses the park and finds the contact unwelcome. Once again, I emphasize that the parties have told me that there are no material facts in dispute. I talked to them on the telephone to make sure. I therefore see no reason to disbelieve the sworn statement.

5. Defendant asserts that this is a legal conclusion. I disagree. Defendant may find it im-

## II. ANALYSIS

The complaint alleges that the City's display of the monument in a public park violates the First and Fourteenth Amendments of the United States Constitution as well as the Nebraska Constitution and seeks declaratory and injunctive relief. (Filing 1.) The parties have agreed that this matter should be resolved on summary judgment and that there are no factual issues for trial.

### A. Standard for Summary Judgment

Summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). *See also Egan v. Wells Fargo Alarm Servs.*, 23 F.3d 1444, 1446 (8th Cir.), *cert. denied*, 513 U.S. 929, 115 S.Ct. 319, 130 L.Ed.2d 280 (1994). To withstand a motion for summary judgment, the nonmoving party "must make a sufficient showing on every essential element of its case for which it has the burden of proof at trial." *Reich v. ConAgra, Inc.*, 987 F.2d 1357, 1359 (8th Cir.1993) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). In passing upon a motion for summary judgment, the district court must view the facts in the light most favorable to the party opposing the motion. *Dancy v. Hyster Co.*, 127 F.3d 649, 652 (8th Cir.

plausible that members of ACLU Nebraska Foundation come into direct contact with the monument and that such contact is "unwelcome" and "deeply offensive." However, the director of ACLU Nebraska Foundation has submitted an affidavit stating that this is so. There is no factual contradiction in the record. For example, there is no claim that ACLU members do not in fact visit the park and come into contact with the monument. Likewise, there is no showing that these individuals are merely feigning offense.

1997), *cert. denied,* 523 U.S. 1004, 118 S.Ct. 1186, 140 L.Ed.2d 316 (1998). *See also Reierson v. Resolution Trust Corp.,* 16 F.3d 889, 891 (8th Cir.1994)

## B. Jurisdiction

The federal cause of action arises under 42 U.S.C. § 1983. Declaratory relief is authorized by Fed.R.Civ.P. 57 and by 28 U.S.C. §§ 2201. Injunctive relief is authorized by Fed.R.Civ.P. 65. Jurisdiction is premised upon 28 U.S.C. §§ 1331 and 1343.

This court has supplemental jurisdiction over the claimed violation of Article I, § 4 of the Nebraska Constitution but will decline to exercise it. State law is barely addressed in the parties' briefs, and the parties cite no state law directly on point. (Pls.' Br. in Supp. at 46–47; Def.'s Br. at 28–29; Pls.'s Reply Br. at 10.) I find that comity favors allowing the Nebraska courts to resolve this complex, yet unanswered, question of state constitutional law. *American Civil Liberties Union v. City of Florissant,* 186 F.3d 1095, 1098–99 (8th Cir.1999) ("when state and federal claims are joined and all federal claims are dismissed on a motion for summary judgment, the state claims are ordinarily 'dismissed without prejudice to avoid "[n]eedless decisions of state law ... as a matter of comity." ' " (internal citations omitted)); 28 U.S.C. § 1367(c)(1) (district court has discretion to dismiss "novel or complex issue[s] of State law").

## C. Standing

Article III of the Constitution imposes "case or controversy" limitations on federal courts. One of the doctrines employed to determine justiciability under Article III is standing. *Schanou v. Lancaster County Sch. Dist. No. 160,* 62 F.3d 1040, 1042 (8th Cir.1995). Standing requires an "injury in fact" that is "fairly traceable" to challenged action of the defendant and will "likely" be "redressed by a favorable deci-

sion." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351. The "injury in fact" requirement is met if the injury is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.*

Since the other elements have been clearly shown to exist, the only "standing" question in this case is whether the plaintiffs can meet the "injury in fact" requirement. They do not allege taxpayer standing.

When taxpayer standing is not alleged, there are *two* views on when plaintiffs have the injury in fact necessary to challenge the constitutionality of governmental displays of religious symbols. The stricter view requires plaintiffs to allege that they have altered their behavior in an effort to avoid contact with a religious symbol. *See, e.g., Freedom From Religion Found. v. Zielke,* 845 F.2d 1463 (7th Cir.1988) (no standing to challenge Eagles-donated Ten Commandments monument because no allegation of efforts to avoid the monument). *But see Books,* 235 F.3d at 300–01 ("injury in fact [exists] when [a plaintiff] is forced to view a religious object that he wishes to avoid but is unable to avoid because of his *right* or duty to attend the government-owned place where the object is located.") (emphasis added.)

The more lenient view is that allegations of avoidance are not required, and that plaintiffs who allege direct and unwelcome personal contact, on government property, with the religious symbol have standing. *See, e.g., Foremaster v. City of St. George,* 882 F.2d 1485, 1491 (10th Cir.1989), *cert. denied,* 495 U.S. 910, 110 S.Ct. 1937, 109 L.Ed.2d 300 (1990) (finding that direct personal contact with city logo which, in part, depicted the local Mormon temple, was sufficient to confer standing); *Saladin v. City of Milledgeville,* 812 F.2d 687 (11th Cir.1987) (standing because plaintiffs were confronted directly by presence of word

"Christianity" on city seal); *Hawley v. City of Cleveland,* 773 F.2d 736 (6th Cir. 1985) *cert. denied,* 475 U.S. 1047, 106 S.Ct. 1266, 89 L.Ed.2d 575, (1986) (standing because plaintiffs alleged sectarian use of public property that impairs their use and enjoyment of property). The most recent Eighth Circuit religious symbol case does not clarify standing. *American Civil Liberties Union v. City of Florissant,* 186 F.3d 1095, 1096 (8th Cir.1999) (opinion did not address standing, facts indicated that the plaintiff could have had taxpayer standing or standing because he alleged direct and unwelcome personal contact).

 Although John Doe has established that he had direct and unwelcome contact with the monument, I need not decide whether this is sufficient to confer standing in the Eighth Circuit. Doe has also stated that he has curtailed his use of Memorial Park because of the presence of the monument, and there is no reason to disbelieve him. This showing is sufficient to confer standing even in those cases adopting the stricter view of the "injury in fact" requirement. As for ACLU's standing, it too has standing because it represent Doe and he has standing. *See, e.g., Warth v. Seldin,* 422 U.S. 490, 511, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) ("Even in the absence of injury to itself, an association may have standing solely as the representative of its members.... The association must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action ....") (citations omitted).

**D. Establishment Clause Claim**

 Plaintiffs argue that the City's display of a monument bearing the text of the Ten Commandments in a public park violates the Establishment Clause of the First Amendment. Governmental action does not violate the Establishment Clause if it (1) has " 'a secular purpose,' " *Florissant,* at 1097 (quoting *Good News/Good Sports Club v. School Dist. of Ladue,* 28 F.3d 1501, 1508 (8th Cir.1994)), (2) "does not 'have the primary or principal effect of advancing religion,' " *id.,* and (3) "does not 'foster an excessive entanglement with religion.' " *Id.* This test originated in *Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). If the governmental action fails any part of this tripartite test, there is an Establishment Clause violation.

 Recently, courts have approached the purpose and effect analysis by asking whether the challenged governmental action " 'either has the purpose or effect of "endorsing" religion.' " *Stark v. Independent School Dist. No. 640,* 123 F.3d 1068, 1077 (8th Cir.1997) (quoting *County of Allegheny v. American Civil Liberties Union,* 492 U.S. 573, 592, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989)).[6] Here, the parties do not argue excessive entanglement, so I will presume that there is none. Rather, I will confine my discussion to the first two prongs of the *Lemon* test, as modified or augmented by the *Allegheny* endorsement test.[7]

6. The defendant asserts that there is no Establishment Clause violation because John Doe is not forced to read or meditate upon the Ten Commandments. I reject this argument. Coercion is not an element of an Establishment Clause violation. *Tarsney v. O'Keefe,* 225 F.3d 929, 935 (8th Cir.2000) (" 'The Establishment Clause, unlike the Free Exercise Clause, does not depend upon any showing of direct governmental compulsion and is violated by the enactment of laws which establish an official religion whether those laws operate directly to coerce nonbelieving individuals or not.' " (quoting *Engel v. Vitale,* 370 U.S. 421, 430, 82 S.Ct. 1261, 8 L.Ed.2d 601 (1962))), *cert. denied,* 532 U.S. 924, 121 S.Ct. 1364, 149 L.Ed.2d 292 (2001).

7. In some circumstances, if challenged governmental activity discriminates among religious sects, strict scrutiny is applied rather

### 1. Purpose

The first part of the inquiry is whether the display of the Ten Commandments monument in Memorial Park has the purpose of advancing or inhibiting religion. In determining whether the display has a valid secular purpose, I evaluate the "totality of the circumstances." *Books*, 235 F.3d at 302. I take the statements of the Supreme Court on the nature of the Ten Commandments as my starting point.

In *Stone v. Graham*, 449 U.S. 39, 41, 101 S.Ct. 192, 66 L.Ed.2d 199 (1980), the Court held that the Ten Commandments are a sacred text in the Jewish and Christian faiths, and the purpose of a Kentucky law requiring that the text of the Ten Commandments be posted in every classroom was "plainly religious" in light of the religious source of the commandments. As the Supreme Court noted,

> The Commandments do not confine themselves to arguably secular matters, such as honoring one's parents, killing, or murder. See Exodus 10:12–17; Deuteronomy 5:16–21. Rather, the first part of the Commandments concerns the religious duties of believers: worshiping the Lord God alone, avoiding idolatry, not using the Lord's name in vain, and observing the Sabbath Day. See Exodus 20:1–11; Deuteronomy 5:6–15.

*Stone*, 449 U.S. at 41–42, 101 S.Ct. 192.

The appearance of the Plattsmouth monument illustrates its religious nature. As the Seventh Circuit observed about a similar Eagles-donated monument:

> Notably, the prefatory words "I am the Lord thy God" are set out in large lettering at the top of the text.... This religious format is enhanced, not detracted from, the etchings at the bottom of the tablet of the Stars of David and the Chi Rho symbol, a distinctive Christian symbol.

*Books*, 235 F.3d at 302.[8] Justice Stevens has observed that "the graphic emphasis" placed on these first lines "is rather hard to square with the proposition that the monument expresses no particular religious preference," particularly in view of the two Stars of David and the symbol for Christ. *Books*, 121 S.Ct. 2209 (Stevens, J., respecting the denial of the petition for writ of certiorari).

Even if I were to consider the Ten Commandments monument as an example of a code of conduct citizens can use to govern their action, it is "a *religious code* that focuses not only on subjects that are beyond the ken of any government and that address directly the relationship of the individual human being and God." *Books*, 235 F.3d at 303 (emphasis added). This indicates that the purpose of the monument is to urge citizens to "embrace the specific religious code of conduct taught in the Ten Commandments." *Id.*[9]

---

than the *Lemon* tripartite test. *Children's Healthcare is a Legal Duty, Inc., v. Min De Parle*, 212 F.3d 1084, 1090 (8th Cir.2000), *cert. denied*, 532 U.S. 957, 121 S.Ct. 1483, 149 L.Ed.2d 372 (2001). Plaintiffs urge me to apply strict scrutiny. (Pls.' Br. In Supp. Of Summ. J. at 26–27.) I do not apply strict scrutiny for two reasons. First, it is not clear that strict scrutiny should be applied here. Second, the display of the monument fails the more common *Lemon* test.

**8.** The monument at issue in *Books*, located in Elkhart, Indiana, was larger than that in Plattsmouth. The Elkhart monument was six feet high and three and a half feet wide.

*Books*, 235 F.3d at 296. The Plattsmouth monument is smaller. No dimensions are given, but it appears to be four and a half to five feet tall, and two and a half to three feet wide. (Def.'s Evid., Ex. B to Winkler Aff.) Other than the overall dimensions, the Elkhart and Plattsmouth monuments appear to be identical.

**9.** That the Eagles donated monuments bearing the text of the Ten Commandments to communities across the country in an attempt to provide youths with a common code of conduct to govern their actions (and that the Eagles attempted to choose nonsectarian language for the Ten Commandments that would

Given the vibrant religious nature of the text of the Ten Commandments, the City must demonstrate that it has attempted to " 'obviate its religious purpose.' " *Books*, 235 F.3d at 303 n. 8 (internal citation omitted). The City asserts that display of the monument is constitutionally acceptable because it was given by a valuable local fraternal organization, is historical because it has been displayed over 35 years, and because the Ten Commandments have a role in secular history and the development of legal codes. (Def.'s Br. at 4.) There is scant evidentiary support for these assertions.

For example, there is no record of the City's intent when it accepted the donation of the monument in 1966. (Pls.' Evid., Ex. 8 [resp. to requests 5, 6].) The minutes of the December 18, 2000 city council meeting at which the council determined not to remove the monument reflect only the decision and not the reasoning for the decision. (Pls.' Evid., Ex. 7.) The only support for the City's assertions of purpose is the following statement from the affidavit of the city administrator:

> The Fraternal Order of Eagles has been for many years a valued organization in Plattsmouth and has contributed in many ways to our city through its philanthropic and community-enhancing activities. Although neither I nor any current member of city government were serving in that capacity in 1965, it is *safe to assume* that the Eagles' monu-

ment which is the subject of this lawsuit was accepted by the city and placed in Memorial Park out of gratitude to the Eagles for their civic work.

(Def.'s Evid., Winkler Aff. ¶ 14 (emphasis added).)

This "guess" by the city administrator does not mitigate or obviate the religious nature of the Ten Commandments monument, even if I accept it as an accurate statement of the purpose for displaying the monument.[10] *Stone*, 449 U.S. at 41, 101 S.Ct. 192 (the Kentucky law requiring the classroom display of the text of the Ten Commandment had no secular purpose, even though Kentucky law required small print at the bottom of each classroom display stating that " '[t]he secular application of the Ten Commandments is clearly seen in its adoption as the fundamental legal code of Western Civilization and the Common law of the United States,' " (quoting 1978 Ky. Acts, ch. 436, § 1 (effective June 17, 1978)), Ky.Rev.Stat. § 158.178 (1980)); *Books*, 235 F.3d at 304 (adoption of city council resolution on "eve of litigation" proclaiming that the secular purpose for display of the Eagles-donated monument was "recognizing the historical and cultural significance of the Ten Commandments" did not transform religious purpose of display).

The City has not presented any evidence that negates the overwhelming religious nature of the monument. As this matter

be acceptable to Protestants, Catholics, and Jews) are well-documented in other cases, although these facts were not included in the evidence submitted by the parties in this case. *See, e.g., Books*, 235 F.3d at 294–95; *State of Colorado v. Freedom From Religion Found., Inc.*, 898 P.2d 1013, 1017 (Colo.1995). In this regard, I agree with Justice Stevens' observation that "[m]aking a religious text nonsectarian ... does not make it secular or strip it of its religious significance." *City of Elkhart v. Books*, 121 S.Ct. 2209, 2210 n. 2 (state-

ment of Stephens, J., respecting the denial of the petition for certiorari).

10. I do not accept this assertion because it is far too speculative. The fact of the matter is that no one knows why the City accepted the monument. If I were to speculate, I find it far more likely that the City accepted the monument for the same reason that other governmental entities accepted similar monuments, and that was to promote Christian and Jewish religious values in the form of a code of conduct.

is being decided on cross motions for summary judgment, and the City has failed to make a showing on an essential element of its defense, the City cannot withstand a motion for summary judgment. *Reich v. ConAgra, Inc.,* 987 F.2d 1357, 1359 (8th Cir.1993) (to withstand a motion for summary judgment, the nonmoving party "must make a sufficient showing on every essential element of its case for which it has the burden of proof at trial.") (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

*Stone* and *Books* suggest that the focus is properly on the primary purpose for display of the Ten Commandments, not whether some secular purpose, however secondary and speculative, can be articulated. If this is the test, the City fails it.

While it is not clear, in the Eighth Circuit, the first prong of the *Lemon* test may be satisfied if only "a" secular purpose can be articulated. *Florissant,* 186 F.3d at 1097. However, even if I were to find that the City has established that "a" secular purpose for displaying the monument was recognition of the civic contributions of the Eagles[11], I would have to conclude that the Plattsmouth display has the primary or principal effect of advancing religion and violates the Establishment Clause for that reason. So, I now turn to the second prong of the *Lemon* test.

### 2. Effect

The Eighth Circuit has stated that when the effect of the display of a religious symbol is in question, the court must "see if the endorsement effect of the religious symbol was negated by its setting." *Florissant,* 186 F.3d at 1098. The setting includes the location of the display and any objects surrounding the religious symbol. *Id.*

In considering whether there is an endorsement effect, the question is "whether an objective observer familiar with the history and placement of the Ten Commandments monument would perceive it as a state [or city] endorsement of religion." *Books,* 235 F.3d at 306. *See Santa Fe Indep. Sch. Dist. v. Doe,* 530 U.S. 290, 308, 120 S.Ct. 2266, 147 L.Ed.2d 295 (2000) (using similar test to determine whether school district policy of permitting student-led, student-initiated prayer at football games violates Establishment Clause).

The physical setting of the Plattsmouth monument does not negate its endorsement effect. The monument is located in Memorial Park, the largest city park. That park contains no other statues or monuments of artistic, cultural, historic, or legal merit. *Compare State v. Freedom From Religion Found., Inc.,* 898 P.2d 1013, 1015–16 (Colo.1995) (finding no Establishment Clause violation by inclusion of similar Eagles-donated monument located on Colorado's capital complex grounds, in part because the grounds included many other monuments with historical significance). It is located immediately in front of a recreational area which includes a barbeque grill, benches, picnic tables, and a permanent shelter. If anything, the setting magnifies the endorsement impact of the monument. Simply put, this edifice, proclaiming "I AM the LORD thy God," is a centerpiece of a significant public place.

It is true that the monument is not at the seat of government. However, this means only that the setting does not enhance its endorsement effect by association with government buildings, not that its endorsement effect is negated by its setting. For Establishment Clause purposes, the cases generally view public parks with the same protective sentiment as public buildings. *See, e.g., Separation of Church and State Comm. v. City of Eugene,* 93 F.3d 617 (9th Cir.1996) (a very

11. I do not.

large Latin cross on a butte in a city park violated the Establishment Clause); *Gonzales v. North Township of Lake County,* 4 F.3d 1412 (7th Cir.1993) (the display of a crucifix in a public park violated the Establishment Clause). As just noted, the monument stands alone in the largest city park in front of recreational equipment, barbeque grills and sheltered picnic tables. It thus exists as a focal point of an important civic place where citizens are explicitly intended to assemble, eat, and socialize.

Moreover, the monument is not presented as part of an "appropriate study of history, civilization, ethics, comparative religion, or the like." *Stone,* 449 U.S. at 42, 101 S.Ct. 192. Nor is it a component of a display of the cultural heritage of the people of Plattsmouth. *See Books,* 235 F.3d at 305.

In short, nothing about the physical setting of the monument negates the endorsement effect of displaying the religious message of and religious symbols inscribed on the Ten Commandments monument. On the contrary, the endorsement effect is magnified.

Neither does the format of the monument dilute its religious message. Rather, it conveys a message that Christianity and Judaism are favored religions. The particular language chosen for the Ten Commandments monument represents the religious views of Protestants, Catholics, and Jews. Two Stars of David and a symbol for Christ are inscribed on it. This sends the message to non-Jews and non-Christians " 'that they are outsiders, not full members of the political community, and [sends an] accompanying message to adherents that they are insiders, favored members of the political community.' " *Santa Fe Indep. Sch. Dist.,* 120 S.Ct. at 2279 (quoting *Lynch v. Donnelly,* 465 U.S. 668, 688, 104

S.Ct. 1355, 79 L.Ed.2d 604 (1984) (O'Connor, J., concurring)).

Likewise, the inclusion of a large American Eagle gripping an American flag at the top of the monument "hardly detracts from the message of endorsement; rather, it specifically links religion, or more specifically these two religions, and civil government." *Books,* 235 F.3d at 307. Further, the fact that the monument acknowledges both Christianity and Judaism does not dilute the endorsement effect. That is, governmental promotion of two religions is no better than governmental promotion of one. *County of Allegheny,* 492 U.S. at 615, 109 S.Ct. 3086 ("The simultaneous endorsement of Judaism and Christianity is no less constitutionally inform than the endorsement of Christianity alone."); *Books,* 235 F.3d at 307.

For these reasons, the primary effect of the Ten Commandments monument in Memorial Park in Plattsmouth is to advance or endorse religion. The display fails the second prong of the *Lemon* test and violates the Establishment Clause.

## III. CONCLUSION

As I have recently said in another context, the job of an inferior federal judge is to honestly apply the precedents of the Supreme Court and the appellate courts whether he agrees with them or not.[12] I have tried to do so in this case. However, if I had a choice, and rather than decide this case, I would gently require that the parties and their talented lawyers eat a meal together, and then amicably resolve this easily resolvable case. Unless there is no other choice, the federal courts are a poor place to fight the culture wars.

---

**12.** Richard G. Kopf, *An Essay on Precedent, Standing Bear, Partial–Birth Abortion and Word Games—A Response to Steve Grasz and* *Other Conservatives,* 35 Creighton L.Rev. 11 (2001).

There is no genuine issue of material fact. The law requires that summary judgment be granted in favor of Plaintiffs on their federal claim, because the display of the Ten Commandments monument in Memorial Park violates the Establishment Clause. As a matter of comity, the state constitutional claim will be dismissed without prejudice.

Plaintiffs seek (1) a declaratory judgment that the placement and retention of the Ten Commandments monument by the City of Plattsmouth on public property violates the Establishment Clause of the United States Constitution; and (2) a permanent injunction against Plattsmouth enjoining it from placing or retaining the Ten Commandments on public property. Plaintiffs' brush sweeps too broadly.

I rule only that the placement and retention of the Ten Commandments monument by the City of Plattsmouth in Memorial Park violates the Establishment Clause of the United States Constitution. I will not enjoin the City from placing or retaining the Ten Commandments on public property generally, but instead will enjoin the City from retaining the Ten Commandments display in Memorial Park as it is now situated.

IT IS ORDERED that:

1. Plaintiffs' motion for summary judgment (filing 28) is granted as to the Establishment Clause claim and denied as to the state constitutional claim;

2. Defendant's motion for summary judgment on both claims (filing 32) is denied;

3. The claim arising under Article I, § 4 of the Nebraska Constitution is dismissed without prejudice;

4. Judgment will be entered by separate document in favor of Plaintiffs on the Establishment Clause claim;

5. Judgment will be withheld until the ruling on any application for attorney fees;

6. The plaintiffs may file an application for attorney fees in accordance with the local rule of practice not later than March 4, 2002;

7. The defendant may respond to the attorney fee application as permitted under the local rules no later than March 15, 2002.