John C. BIRDINE, et al., Plaintiffs,

v.

Thomas D. MORELAND, et al., Defendants.

Civ. A. No. C83–943A.

United States District Court,
N.D. Georgia.

Sept. 13, 1983.

Jeffrey O. Bramlett, Thomas B. Metzloff, Bondurant, Miller, Hishon & Stephenson, Atlanta, Ga., for plaintiffs.

Atty. Gen., Michael J. Bowers, Atlanta, Ga., First Ass't Atty. Gen., Marion O. Gordon, Asst. Atty. Gen., Charles Richards, State of Ga., for defendants.

## ORDER

SHOOB, District Judge.

This action is presently before the Court on the parties' cross-motions for summary judgment. Except as to Count IV of the complaint, the parties have stipulated as to all the relevant facts, which are set out briefly below.

## FACTS

In early 1981 defendant Georgia Department of Transportation ("DOT") brought a condemnation action in the Superior Court of Fulton County, Georgia, Civil Action No. C–74635, for the purpose of taking 4.414 acres of land necessary for the expansion of a highway cloverleaf at the intersection of I–75 and Cleveland Avenue, S.E., in Atlanta, Fulton County, Georgia. On March 26, 1981, the superior court entered an order condemning the property.

Subsequently, on January 20, 1982, DOT filed an amendment to its condemnation petition notifying the Court that after taking possession of the condemned parcel, it had discovered four cemetery headstones in a building located on the property. DOT informed the court that it believed a cemetery might be located on a portion of the condemned land and sought the Court's supervision and guidance in protecting the rights of descendants of persons buried there. The superior court then ordered that a hearing be held, directing that notice be given directly to those persons already tentatively identified as descendants, and also that notice to as yet unidentified interested parties be effected by publication as well as by posting notices on the subject property. The superior court also appointed a guardian *ad litem* to represent the interests of all descendants of persons buried in the cemetery.

Following the hearing, the superior court entered an order on March 10, 1982, finding, *inter alia*, (1) that at one time there had been a cemetery known as the Gilbert Cemetery on a portion of the condemned land; (2) that the exact dimensions of the cemetery and the total number of bodies buried there were unknown; (3) that bodies had been buried in the cemetery from as far back as the mid-1800's up to the early 1950's, but the identities of only some of those persons buried there were known; (4) that at the time DOT took possession of the property, the cemetery had been obliterated and desecrated so that there were no headstones or tombstones, gates, markers or walkways still visible, and a liquor store parking lot, a laundry room, and a small office building all encroached on the property; and (5) that DOT did not seek to excavate the area but only to utilize a portion of the property as a loop road leading onto the I–75 expressway. Finally, the court found that it would serve no good purpose to scrape or excavate the surface to determine the locations of specific grave sites.

The superior court then concluded, as a matter of law, that DOT had authority to condemn the cemetery, but that the court must balance the state's need for public improvement with the need to preserve the dignity of those buried in the cemetery and the rights of the descendants of those persons. To achieve the appropriate balance, the court ordered, *inter alia*, that the grave sites on the property remain undisturbed, but that the location of the cemetery be suitably memorialized by DOT by means of appropriate landscaping, including the erection of a monument bearing a history of the Gilbert Cemetery and a suitable memorial. The court then established a committee comprised of a representative from DOT, the guardian *ad litem*, a state historian, a local minister, and a community resident with ancestors buried in the cemetery to develop a plan conforming to these requirements. The committee was re-

quired to hold at least one public hearing before submitting its proposal to the court, giving notice of the hearing by mail to all those identified as descendants of persons buried in Gilbert Cemetery, as well as by publication and posting to any other interested parties.

The committee appointed by the superior court subsequently met on four different occasions and produced a proposal calling for a central plaza area surrounding an obelisk-type monument, which would be inscribed with the names of persons known to be buried there, as well as an appropriate religious inscription and a brief history of the cemetery. The proposal further provided that a religious statue would be placed near the plaza, and that the three remaining original headstones, along with a number of small white Latin-style crosses, would be located in the lower cemetery in order to delineate its general dimensions and to convey the "feeling" of a graveyard. Finally, the proposal called for a memorial service to be held to dedicate the site after construction was completed.

A public hearing was held on April 6, 1982, following notification to interested persons as prescribed by the superior court. Approximately thirty-five people attended the hearing, and eleven of these made some comment following the committee's presentation of its proposal. Although one speaker made some negative comments concerning past neglect of the cemetery, no one expressed any substantive disagreement with the committee's proposal. Each speaker expressed general approval of the plan; however, none specifically addressed the propriety of the religious statue or the crosses as elements of the memorial.

Following submission of the committee's report recommending adoption of its proposal, interested parties were once again notified by mail, publication and posting, and ordered to show cause why the report should not be confirmed, modified, or rejected. Subsequently, on June 24, 1982, the superior court entered an order approving the committee's report and ordering DOT to implement its proposal.

In early 1983, following press reports that DOT planned to display a statue of Jesus in the highway cloverleaf, representatives of plaintiff American Civil Liberties Union and other organizations arranged a meeting with DOT Commissioner Thomas D. Moreland. On February 8, 1983, these representatives explained to Commissioner Moreland their concern that DOT's proposed actions conflicted with the first amendment to the United States Constitution. At that meeting the DOT representative on the Gilbert Cemetery committee agreed to arrange for the committee to meet with these representatives in order to consider their concerns. However, following such a meeting on March 3, 1983, the committee issued a decision not to modify its plan in any respect. The DOT itself subsequently indicated that it believed the proposed memorial was consistent with all relevant constitutional provisions and declined to notify the superior court of the constitutional issues that had been raised. Shortly thereafter, DOT proceeded to erect a number of Latin crosses in the cloverleaf pursuant to the memorial plan.

Plaintiffs responded by filing the instant lawsuit on May 13, 1983, seeking declaratory and preliminary and permanent injunctive relief. At the hearing on plaintiff's motion for a preliminary injunction held August 5, 1983, defendants indicated that no further action would be taken toward completion of the Gilbert Cemetery memorial until after this Court had ruled on the recently filed cross-motions for summary judgment, so the request for preliminary injunctive relief became moot.

## DISCUSSION

Plaintiffs' complaint is brought in four counts. Count I alleges that defendants "have violated and are continuing to violate the [Establishment Clause of the] First Amendment to the United States Constitution by actively initiating, formulating, encouraging, and proceeding with the plan to acquire, erect, display, and maintain reli-

gious symbols on public property with public funds." Complaint ¶ 29. Count II alleges that the same actions are also violative of the Free Exercise Clause of the first amendment in that they inhibit and interfere with the right of the individual non-Christian plaintiffs to freely exercise their religious beliefs and to guide and control the religious training of their children. Count III alleges that defendants' actions are violative of the Constitution of the State of Georgia, Article I, § 2, ¶ 7, which provides: "No money shall ever be taken from the public treasury, directly or indirectly, in aid of any church, sect, cult, or religious denomination or of any sectarian institution." Count IV alleges that defendants have deprived plaintiff Hattie E. Robinson, a descendant of persons buried in Gilbert Cemetery, of her property without due process of law or just compensation in violation of the fifth and fourteenth amendments to the United States Constitution.

As to the first three counts of their complaint, plaintiffs seek (1) an order permanently enjoining defendants from making any further expenditure of public funds or taking any further action to acquire, erect, display, or maintain the statue, crosses, or any other religious symbol on public property at the site of the Gilbert Cemetery, and (2) a declaratory judgment declaring that the Fulton County Superior Court's order of June 24, 1982, is unconstitutional and unenforceable insofar as it directs defendants to perform any act enjoined by this Court. As to Count IV, plaintiffs seek identical injunctive relief, as well as an order (1) requiring defendants to make reasonable and systematic efforts to identify all persons who own interests in burial easements in Gilbert Cemetery, to take all practicable steps necessary to give such persons notice of the condemnation proceedings, and to afford persons so notified an opportunity for a hearing before depriving them of their property rights in the burial easements; and (2) directing defendants to justly compensate all owners of burial easements in Gilbert Cemetery in accordance with the laws of the State of Georgia.

The parties have informed the Court that some factual disputes remain as to the issues raised by Count IV, and that some further discovery may be necessary to resolve these factual questions. Accordingly, the pending cross-motions for summary judgment will be treated as motions for only partial summary judgment on Counts I–III of the complaint, with ruling DEFERRED as to Count IV until further order of the Court.

## I. *Standing*

■ It is undisputed that the individual plaintiffs live near the intersection where the Gilbert Cemetery memorial is to be located and pass it frequently in the ordinary course of their routine activities. They object to defendants' interference with their free use of the intersection by displaying constitutionally and theologically objectionable religious symbols in prominent view on public property. In accord with Supreme Court and Eleventh Circuit doctrine, plaintiffs clearly have suffered sufficient noneconomic injury to compel a finding that they have standing in this case. *American Civil Liberties Union of Georgia v. Rabun County Chamber of Commerce, Inc.*, 698 F.2d 1098, 1104–08 (11th Cir.1983).

■ The individual plaintiffs also have standing by virtue of the fact that they are taxpayers in the relevant jurisdiction. *Flast v. Cohen*, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). The individual plaintiffs have met the *Flast* test for taxpayer standing by identifying an allegedly unconstitutional expenditure of funds by defendants pursuant to a state spending statute. In purporting to compensate owners of burial easements in Gilbert Cemetery, defendants have chosen a means—the erection of crosses and a statue of Jesus—which is allegedly violative of the first amendment to the United States Constitution. As in *Flast*, the nexus between the individual plaintiffs' status as taxpayers and defendants' allegedly unconstitutional

expenditure of public funds is clear and direct.[1]

## II. *Establishment Clause*

■ The Establishment Clause of the first amendment prohibits Congress from making any law "respecting the establishment of religion...." U.S. Const., Amend. I. This prohibition is applicable to the states through the fourteenth amendment. *See, e.g., Everson v. Board of Education,* 330 U.S. 1, 67 S.Ct. 504, 91 L.Ed. 711 (1947). In interpreting the Establishment Clause, the Supreme Court has identified three tests to be applied to the challenged actions of a state:

(1) Whether the action has a secular purpose;

(2) Whether the "principal or primary effect" is one which neither advances nor inhibits religion;" and

(3) Whether the action fosters " 'an excessive government entanglement with religion.' *Walz [v. Tax Commissioners,* 397 U.S. 664, 674, 90 S.Ct. 1409, 1414, 25 L.Ed.2d 697 (1970) ].''

*Lemon v. Kurtzman,* 403 U.S. 602, 612–13, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971) (citations omitted). If any one of these three principles is violated, the challenged governmental action will be found to violate the Establishment Clause. *See, e.g., Stone v. Graham,* 449 U.S. 39, 40–41, 101 S.Ct. 192, 193, 66 L.Ed.2d 199 (1980); *Rabun County, supra,* 698 F.2d at 1109.

In the instant case, plaintiffs challenge two proposed actions of defendants: the erection and maintenance on public property of a statue of Jesus and of a number of Latin crosses as part of the Gilbert Cemetery memorial. Since these two actions are distinct, the *Lemon* analysis will be applied to each separately.

## A. *Statue of Jesus*

■ Based on the undisputed facts before the Court, there is no doubt that the proposed erection and maintenance of a statue of Jesus as a part of the Gilbert Cemetery memorial fails to satisfy the *Lemon* test. Defendants' contention that their only purpose in erecting the statue is a secular one, *i.e.,* to compensate burial easement owners and to commemorate the dead, even if accepted as true, is insufficient to avoid a conflict with the Establishment Clause. "[A] government may not 'employ religious means to reach a secular goal unless secular means are wholly unavailing.' *Rabun County, supra,* 698 F.2d at 1111 (quoting *School District of Abington Township v. Schempp,* 374 U.S. 203, 294, 83 S.Ct. 1560, 1609, 10 L.Ed.2d 844 (1963) (Brennan, J., concurring)). Even though compensation and commemoration might constitute permissible secular goals, here defendants could have prevailed on the committee to propose a memorial that faithfully recorded the historical significance of the burial ground and reverently memorialized those persons buried there without the use of a purely Christian religious symbol such as a statue of Jesus.[2]

The undisputed facts of this case thus lead to the conclusion that the choice of the statue of Jesus had an impermissible religious purpose and, therefore, violated the Establishment Clause. Since the challenged action fails to satisfy the first prong of the *Lemon* test, the Court need not consider the other two prongs. Nor need the Court address plaintiffs' other challenges to the statue under the Free Exercise Clause and the Georgia Constitution.

Defendants have represented to the Court that they will abandon their efforts to erect the statue of Jesus should the Court conclude that such action would be

---

**1.** Having determined that at least the individual plaintiffs satisfy Article III standing requirements, the Court need not consider the standing of the two corporate plaintiffs. *Rabun County, supra,* 698 F.2d at 1108–09.

**2.** The Court notes that defendants have been unable to ascertain actual church affiliations for

more than half of the fifty-two individuals known to be buried in Gilbert Cemetery, and it is estimated that up to fifteen hundred persons may be buried in the cemetery. Hence it is difficult to justify the use of specifically Christian symbols as a means to achieving the state's purportedly secular end.

unconstitutional. Accordingly, although a judgment shall be entered declaring that erection of the statue would violate the Establishment Clause, there is no need for issuance of an injunction as prayed for by plaintiffs.

### B. *Latin Crosses*

The erection of a number of Latin crosses on the site of the cemetery presents the Court with a more difficult question. While defendants could perhaps achieve the commemorative and compensatory purposes of this aspect of the memorial by erecting purely secular grave markers, the Court is also mindful of the legitimate interests of the descendants of persons buried in the cemetery in having their ancestors' burial place marked in accord with their particular religious preferences.

In weighing these interests, the Court believes that the appropriate balance is struck by defendants' offer to provide those descendants who have been identified with their choice of an appropriate marker. Under defendants' proposal, descendants will be notified that they may select an appropriate marker, including a plain tablet, a Latin cross, a Star of David, or any other religious or non-religious symbol, to be placed in the cemetery in memory of their deceased ancestor. Defendants will bear the expense of constructing each such marker, up to a maximum cost of $62.50 per marker. Defendants will also supply a metal plaque to be placed on each marker bearing the name of the deceased individual. These markers will then be placed throughout the general area of the cemetery, not so as to identify particular grave sites but simply to commemorate the burial ground as a whole together with those individuals who are known to be buried there.

Defendants' proposed action does not conflict with the first amendment. In contrast to the proposed erection of a statue of Jesus, defendants plan to erect religiously symbolic grave markers *only* when specifically requested by known descendants of persons buried in the cemetery. Defend-

ants will thus employ religious means to reach their secular goal only when secular means are unavailing. *Cf. School District of Abington Township v. Schempp*, 374 U.S. 203, 294, 83 S.Ct. 1560, 1609, 10 L.Ed.2d 844 (1963) (Brennan, J., concurring). Moreover, the erection and maintenance of religiously symbolic grave markers will not have the primary effect of advancing or inhibiting religion. Defendants' erection of markers in compliance with the religious sentiments of known descendants in no way implies state approbation or condemnation of any particular religion or of religion in general. Finally, defendant's role as a caretaker of a memorial that may contain some religious symbols cannot be fairly characterized as "fostering an excessive entanglement with religion."

Nor is the Free Exercise Clause offended by defendants' proposed action. By permitting descendants to select a non-religious marker or a religious marker of their own choice, the state is acting with complete neutrality as regards religious preferences. Defendants thus "effect no favoritism among sects," *Abington, supra,* 374 U.S. at 305, 83 S.Ct. at 1615 (Goldberg, J., concurring), and therefore do not run afoul of the Free Exercise Clause.

For the same reasons, the Court also concludes that defendants' proposed placement of grave markers in accord with the descendants' wishes does not violate Art. 1, § 2, ¶ 7 of the Georgia Constitution. Although in the opinion of the Georgia Attorney General, this provision is intended to have a stronger application than the first amendment to the United States Constitution, 1960–61 Op. Att'y Gen. p. 349, nothing in the Georgia courts' application of this provision would indicate that the type of action proposed here is proscribed.

### CONCLUSION

The United States Constitution thus prohibits defendants from erecting and maintaining a statue of Jesus as part of the Gilbert Cemetery memorial. Plaintiffs are therefore entitled to summary judgment on

Count I of their complaint insofar as it challenges this proposed action. However, because defendants have represented to the Court that they will abandon plans to erect the statue should the Court determine such action to be unconstitutional, no injunction will issue.

Plaintiffs' challenge to defendants' original proposal to erect a number of Latin crosses has been rendered moot by defendants' new proposal to erect religious or non-religious markers according to the wishes of known descendants, which action the Court has held to be permissible under both the United States and Georgia Constitutions. Defendants shall submit for the Court's approval a draft of a letter to be sent to all known descendants informing them of their right to choose a suitable marker in memory of their deceased ancestor. The approved letter shall then be sent to each known descendant with a copy of the instant order attached.[3] Defendants have indicated that they will continue to make every reasonable effort to identify other descendants presently unknown, and that once the memorial has been completed and dedicated, they will be responsible for its proper maintenance in the future.

### SUMMARY

In sum, (1) treating the parties' motions as motions for partial summary judgment on Counts I–III of the complaint, plaintiffs are GRANTED summary judgment on Count I insofar as it challenges the erection and maintenance of the statue of Jesus, and the erection and maintenance of the statue is accordingly DECLARED to be unconstitutional. However, (2) defendants' new proposal to erect religious or non-religious markers according to the wishes of known descendants is DECLARED to be constitutional. (3) In all other respects, therefore, both parties' motions for partial summary judgment are DENIED as moot. (4) Within 10 days of the date of this order, defendants are ORDERED to submit to the Court a draft of a letter informing descendants of their right to select a suitable grave marker. (5) Ruling on the parties' motions for summary judgment on Count IV of the complaint is DEFERRED until further order.

IT IS SO ORDERED, this 13th day of September, 1983.

---

**3.** Acceptance of defendants' offer and selection of a marker shall not be deemed to compromise the claims raised by plaintiff Robinson in Count IV of the complaint.