The Honorable Paul Weaver State Representative P.O. Box 33 Violet Hill, AR 72584
Dear Representative Weaver:
You have requested my opinion concerning an occurrence at the Stone County Courthouse, which you describe as follows:
 I attended a Quorum court meeting on February 13 at the Stone County courthouse. Before the meeting was called to order a video was shown concerning a former prisoner's change of heart and embracing Christianity. This was being shown because one of the Quorum court members wants to establish a chapel at our local jail. This discussion was stopped by a member of the audience [c]iting separation of church and state. As this was in a courthouse he objected to the content of the video and of discussion afterward.
Your question is:
What is the legality of showing this video in a courthouse?
RESPONSE
Summary of Response
It is my opinion that the answer to this question will ultimately depend upon whether the showing of the video constituted the religious expression of the county, or the religious expression of a private individual. If the showing of the video constituted the religious expression of the county (or religious expression that was endorsed by the county), the showing will be problematic under the Establishment Clause of theFirst Amendment to the U.S. Constitution. If, on the other hand, the showing of the video constituted the religious expression of a private individual (not endorsed by the county), the showing may be protected by the Free Speech Clause and the Free Exercise Clause of the First Amendment to the U.S. Constitution. A crucial factor in evaluating the situation will be whether the courthouse is a "public forum."
These issues will require certain determinations of fact that I am not in a position to make, including: (1) Who is purported to have sponsored the showing of the video; and (2) Whether the proponents of all religious viewpoints are given an equal opportunity to express their views at the courthouse prior to quorum court meetings. The ultimate question of the legality of the showing of this video is "in large part a legal question to be answered on the basis of judicial interpretation of social facts. . . . Every government practice must be judged in its unique circumstances. . . ." Lynch v. Donnelly, 465 U.S. 668 at 693-694 (1984) (O'Connor, J., concurring).
Discussion
The legal issue that is raised by your question requires harmonization of certain constitutional principles. The constitutional principles that are most pertinent to this issue are those that arise under the Religion Clauses of the First Amendment to the U.S. Constitution (i.e., the Establishment Clause and the Free Exercise Clause), and under the Free Speech Clause of the First Amendment to the U.S. Constitution. If the showing of the video was, as a factual matter, sponsored and endorsed by the quorum court, the Establishment Clause of the First Amendment may be implicated. That clause prohibits government endorsement of religion. However, if, as a factual matter, the video was shown at the behest of a private individual, the showing could constitute private religious speech, which is protected by the Free Exercise Clause and the Free Speech Clause of the First Amendment. As the U.S. Supreme Court has stated, "there is a crucial difference between government speech endorsing religion, which the Establishment Clause forbids, and private speech endorsing religion, which the Free Speech and Free Exercise Clauses protect."Santa Fe Independent School Dist. v. Doe, 530 U.S. 290, 302
(2000); Westside Community Bd. of Ed. v. Mergens, 496 U.S. 226, 250
(1990) (O'Connor, J.).
Although the U.S. Supreme Court has not addressed a scenario exactly like the one you have described, the court's reasoning in other cases does provide guidance in analyzing this scenario. The cases that seem to provide the most pertinent guidance are the cases involving challenges to the display of religious symbols and texts on public property.
As an initial matter, I must point out that the fact that religious expression takes place on government property is not, in and of itself, legally problematic. Capitol Square Review Advisory Bd. v. Pinette,515 U.S. 753 (1995). The question, rather, is whether the religious expression is expression by the government itself (or endorsed by the government), or whether instead it is religious expression by a private party. Id.
A crucial factor in analyzing your scenario is whether the location and time at which the video was shown is a "public forum" and whether proponents of all viewpoints are given equal access to the location and time for the purpose of expressing their views. If not, the showing of the video is problematic, even if shown at the behest of a private individual, because the quorum court would, under such circumstances, be discriminating in favor of the particular religious viewpoint expressed in the video. Such a scenario would be akin to that which was before the court in Allegheny County v. Greater Pittsburgh ACLU, 492 U.S. 573
(1989). In that case, the Court held that the display during the holiday season of a privately-sponsored crèche depicting the Christian nativity scene on the "Grand Staircase" of the Allegheny County Courthouse violated the Establishment Clause. An important factor in the Court's decision was the fact that the staircase was not open to all viewpoints on an equal basis. The county was thus favoring a particular sectarian expression. The Court stated: "[T]he Grand Staircase does not appear to be the kind of location in which all were free to place their displays."Allegheny, 492 U.S. at 599-600, and n. 50. The Court expressly distinguished that site from a public forum that is accessible to all viewpoints, and made clear that if the staircase had been available to everyone on the same terms, "the presence of the creche in that location for over six weeks would then not serve to associate the government with the crèche." Id.
In the cases involving religious expression in true public forums, the Court has held that the government's permitting such religious expression does not violate the Establishment Clause, and indeed, is required by the Free Speech and Free Exercises Clauses. For example, in Capitol SquareReview Advisory Bd. v. Pinette, 515 U.S. 753 (1995), the Court upheld the display of a cross by the Ku Klux Klan on the Capitol Square, the statehouse plaza in Columbus, Ohio, which was declared by law to be a public forum. The Court reached a similar conclusion in Lamb's Chapel v.Center Moriches Sch. Dist., 508 U.S. 384 (1993). There, a school board enacted regulations under which school facilities could be used after school hours for "civic, social, and recreational" purposes. However, the regulations excluded use of the facilities for religious purposes. Under this exclusion, the board denied a local church the use of school facilities for the purpose of showing a religious-oriented film series on child-rearing and family values. The Court held that even though the school could limit the nature of the public forum it had created, the church's requested use fell within the board's own limitation; thus, denial on the basis of the religious nature of the content of the film series constituted a violation of the Free Speech Clause. Accord, Widmarv. Vincent, 454 U.S. 263 (1981).
In Lynch v. Donnelly, 465 U.S. 668 (1984), another case involving a challenge to the display of a crèche during the holiday season, the Court emphasized the highly contextual nature of its inquiry into any allegation of violation of the Establishment Clause.
The Court stated:
 Rather than mechanically invalidating all governmental conduct or statutes that confer benefits or give special recognition to religion in general or to one faith — as an absolutist approach would dictate — the Court has scrutinized challenged legislation or official conduct to determine whether, in reality, it establishes a religion or religious faith, or tends to do so.
Lynch, 465 at 678.
The Lynch Court also noted the importance, in the Establishment Clause inquiry, of the factors it had considered in Lemon v. Kurtzman,403 U.S. 602 (1971). In Lemon, the Court had held that in order to avoid offending the Establishment Clause, the government action in question must: (1) have a secular purpose; (2) have a primary effect that neither advances nor inhibits religion; and (3) not foster an excessive entanglement with religion. Id. at 612-13.
In the factual context of Lynch, the Court found, after giving consideration to the Lemon factors, that the crèche display did not violate the Establishment Clause. Under the circumstances of the history and tradition involved in the display, any benefit to religion was merely incidental. However, the Lynch Court also noted that relevant factual considerations had led it to invalidate a state statute requiring the display of the Ten Commandments in public classrooms, where such display was religiously motivated, see Stone v. Graham, 449 U.S. 39 (1980), and to invalidate state statutes requiring Bible readings and recitation of the Lord's Prayer in public schools. See Abington School Dist. v.Schempp, 374 U.S. 203 (1963). Accord, City of Elkhart v. Books et al.,235 F.3d 292 (7th Cir. 2000) (city's display of monument inscribed with Ten Commandments on lawn of city's municipal building violated the Establishment Clause), cert. denied, 532 U.S. 1051 (2001).
The foregoing discussion of the Court's precedents in this area of the law indicate that the question of the legality of the showing of the religious video to the quorum court will be highly factual in nature. The primary determination that must be made is whether the showing of the video, as a religious expression, was the religious expression of the county, or of a private individual. In making this determination, an important factor will be whether the location and time of the showing were made equally available to the proponents of other viewpoints. If not, the showing could well be deemed to constitute either the religious expression of the county itself, or the county's endorsement of that religious expression, which will be problematic under the Establishment Clause.[1] On the other hand, if the location and time are made equally available to all, the quorum court cannot prohibit the showing of the video simply because of its religious content without violating the Free Speech Clause.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
[1] I also note that if the quorum court chooses to establish a chapel, it must give full consideration to Establishment Clause concerns, and may not favor any particular religious viewpoint over others. See Larson v. Valente, 456 U.S. 228 (1982).