BRIGHT, Circuit Judge,
concurring.
I concur in Judge Becker’s excellent opinion but for emphasis make a separate statement.
A world of difference exists between the conduct of the Chester County officials approving the placement of the plaque at the then main entrance to the Chester County Courthouse eighty-three years ago and the decision of Chester County not to remove the plaque as of today.
In my view, several crucial facts support our decision today and give rise to a unique situation unlike any prior case. First, when the Courthouse opened its new entrance in 2001 for security and cost concerns, Chester County and the Commissioners did not change the location of the plaque. Moreover, in the many years the plaque has hung on the Courthouse, the County has never taken any action to commemorate, celebrate, or highlight it. With the closing of the former entrance, the plaque is barely visible from the street, and its text is mostly obscured. These facts can hardly be construed as Chester County’s endorsement of religion. In not changing the location of the plaque to the main entrance or otherwise actively drawing attention to the plaque, Chester County and its Commissioners’ conduct indicates neutrality toward the plaque and its text.
I agree with the majority that we cannot read Stone v. Graham, 449 U.S. 39, 101 S.Ct. 192, 66 L.Ed.2d 199 (1980), as requiring that any government posting of the Ten Commandments be construed as an endorsement of religion. Nonetheless, we must be mindful of the Supreme Court’s recognition that the decalogue is “undeniably a sacred text in the Jewish and Christian faiths.” 449 U.S. at 41, 101 S.Ct. 192. In negotiating the often treacherous path of Establishment Clause jurisprudence, I also turn to Justice Goldberg’s concur *271 rence in School Dist. of Abington Township v. Schempp:
The fullest realization of true religious liberty requires that government neither engage in nor compel religious practices, that it effect no favoritism among sects or between religion and nonreligion, and that it work deterrence of no religious belief. But devotion even to these simply stated objectives presents no easy course, for the unavoidable accommodations necessary to achieve the maximum enjoyment of each and all of them are often difficult of discernment. There is for me no simple and clear measure which by precise application can readily and invariably demark the permissible from the impermissible.
It is said, and I agree, that the attitude of government toward religion must be one of neutrality. But untutored devotion to the concept of neutrality can lead to invocation or approval of results which partake not simply of that noninterference and noninvolvement with the religious which the Constitution commands, but of a brooding and pervasive devotion to the secular and a passive, or even active, hostility to the religious. Such results are not only not compelled by the Constitution, but, it seems to me, are prohibited by it.
374 U.S. 203, 305-06, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963) (Goldberg, J., concurring).
This case" presents a scenario entirely distinct from the cases in which government officials make a contemporaneous decision about a Ten Commandments display. See, e.g., Adland v. Russ, 307 F.3d 471, 480 (6th Cir.2002); Books v. City of Elkhart, 235 F.3d 292, 304 (7th Cir.2000).
*272 [[Image here]]
*273 [[Image here]]
*274 [[Image here]]