BOWMAN, Circuit Judge,
partially concurring and dissenting.
I agree with the Court’s decision that Doe and the ACLU Foundation of Nebraska have standing to bring this suit. I also agree that this case cannot be decided under Larson v. Valente’s strict-scrutiny test. 456 U.S. 228, 246, 102 S.Ct. 1673, 72 L.Ed.2d 33 (1982). I cannot, however, agree with the Court’s conclusion that the evidence of Plattsmouth’s religious purpose is so unmistakably “clear” and “undisputed” as to warrant the conclusion that the first part of the Lemon test has been violated. Ante at 1038, 1036. Nor do I agree that the monument violates the second part of the Lemon test. Instead, because I cannot conclude that the primary effect of the placement of the Eagles’ monument in an inconspicuous spot in a city park is to advance or to “endorse” religion, I would reverse the decision of the District Court.
I.
A.
The opinion of the Court holds that the monument’s presence violates the Establishment Clause because the city had a religious purpose when it erected the monument. Lemon v. Kurtzman, 403 U.S. 602, 612, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971) (requiring “a secular ... purpose” for state action). I disagree with this conclusion for several reasons. Because it forces this conclusion, the Court goes beyond what the facts suggest, what the District Court found, and what Supreme Court precedent permits. Specifically, in order to find religious purpose for the city’s actions where none exists, the Court uses a form of reasoning that the Supreme Court has previously disavowed. Moreover, the Court’s finding of a religious purpose essentially means that the District Court’s findings of fact on this issue were clearly erroneous; yet nowhere does the opinion state that conclusion. In truth, there is no factual basis for concluding that the city had a religious purpose when it permitted the monument to be erected.
There is very little evidence regarding the monument’s origins and the purpose of those who erected it. The District Court’s findings of fact reflect the paucity of this evidence. Specifically, the District Court found that “[tjhen-Street Commissioner Art Hellwig and other city employees helped erect the monument. Hellwig was at the time an officer of the Eagles, and it is not known whether he helped erect the monument in his capacity as Street Commissioner or as an Eagles officer.” 186 F.Supp.2d at 1027 (citation omitted). Later, the District -Court concluded that “there is no record -of the City’s intent when it accepted the donation of the monument in 1966.” Id. at 1033. The District Court acknowledged that the only direct evidence of the city’s purpose was the *1044 “guess” of the current City Administrator, who stated that it was “safe to assume that the Eagles’ monument ... was accepted by the city and placed in Memorial Park out of gratitude to the Eagles for their civic work.” Id. at 1083 (quoting Winkler affidavit). But the District Court discounted this reason because “[t]he fact of the matter is that no one knows why the City accepted the monument.” Id. at 1033 n. 10. Ultimately, the District Court was unwilling “to speculate” and attempt to attribute a motive to the city. Id. Consequently, the court avoided the secular versus religious purpose question and concluded that, in any event, the effects part of the Lemon test was violated. I disagree with the Court’s finding of a religious purpose where the District Court concluded there was inadequate evidence.[12]
Given the facts as the District Court found them and given the dearth of evidence related to Plattsmouth’s intent, there is no reason to perceive a religious purpose where the District Court observed that “no one knows why the City accepted the monument.” Id. at 1033. The Court goes too far when it concludes that “there is clear evidence Plattsmouth’s purpose was religious” and that the city’s avowed secular purpose was “only a self-serving statement, by someone without first-hand knowledge.” Ante at 1038. Even more strongly, the Court states that:
the evidence shows Plattsmouth was “motivated wholly by religious considerations.” Plattsmouth abandoned its duty to religious neutrality and acted with the intent of promoting a particular point of view in religious matters. By expressing a religious truth, Platts-mouth began establishing religion in 1965 when it installed its monument.
Id. at 1039 (citations omitted); see also id. at 1038 (“[W]e conclude Plattsmouth’s purpose in installing the monument was solely religious. Indeed, Plattsmouth’s monument is the paradigmatic violation of the Establishment Clause ....”). Typically, where courts have found such a clear religious purpose behind a government’s display of the Ten Commandments, the evidence of religious purpose has been explicit. See, e.g., Glassroth v. Moore, 335 F.3d 1282, 1296-97 (11th Cir.), cert. denied, - U.S. -, 124 S.Ct. 497, 157 L.Ed.2d 404 (2003). In the absence of clear evidence to the contrary, the city’s stated reason should stand. See Lynch v. Donnelly, 465 U.S. 668, 680, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984).
Even though there is no evidence to support the conclusion that Plattsmouth had a religious purpose in erecting the monument, the Court finds one by reasoning that because the Eagles had a religious purpose, the city must have adopted that religious purpose. Ante at 1038 (“The Eagles donated this monument as a part of its nationwide campaign to spread its version of the Ten Commandments; Platts-mouth’s purpose in erecting it was nothing more complex than the adoption of that goal.”). More precisely, the Court finds “undisputed evidence of Plattsmouth’s purpose in accepting, erecting and maintaining the monument ... in the content and context of the monument itself.” Id. at 1036 (emphasis added). I cannot agree that this method of deduction is allowable under Supreme Court precedent or that the Court has reached a reasonable conclusion.
First, and most importantly, the Court’s reasoning is erroneous under Lynch. The *1045 majority acknowledges Lynch by .quoting it when explaining that “the evidence shows Plattsmouth was ‘motivated wholly by religious considerations,’ ” ante at 1039 (quoting Lynch, 465 U.S. at 680, 104 S.Ct. 1355); yet the Court ignores the substantive law of that case. In Lynch, the Supreme Court first observed that “[f]ocus exclusively on the religious component of any activity would inevitably lead to its invalidation under the Establishment Clause.” 465 U.S. at 680, 104 S.Ct. 1355. Next, the Court noted that it had in the past “invalidated legislation or governmental action on the ground that a secular purpose was lacking, but only when it has concluded there was no question that the statute or activity was motivated wholly by religious considerations.” Id. Finally, the Lynch Court explained the lower court’s error: “The District Court inferred from the religious nature of the creche that the city has no secular purpose for the display. In so doing, it rejected the city’s claim that its reasons for including the creche are essentially the same as its reasons for sponsoring the display as a whole. The District Court plainly erred by focusing almost exclusively on the creche.” Id. I must conclude that this Court, by ignoring existing Supreme Court precedent, has erred by finding religious purpose in the manner in .which it has.
Second, wholly apart from the problem just flagged, there is no reason to conclude that the city adopted whatever purpose the Eagles had when they made the donation.
Rather, the history and context of this case show only that the city accepted the monument on the same terms as it did any of the other donated items that have’ been placed in the city’s parks. Governmental entities generally do not adopt the messages contained on the various monuments they permit to be erected on government land. In Van Orden v. Perry, which considered an Eagles monument situated on the grounds of the Texas State Capitol, the Fifth Circuit expressly rejected the plaintiffs attempt to prove a religious purpose for the Eagles’ actions and then to attribute that purpose to the State of Texas. 351 F.3d 173, 179-80 (5th Cir.2003). That court rejected this method of proving religious purpose because nothing in the legislative history, in the events surrounding the monument’s donation, or in the state’s practice of accepting and erecting monuments “suggested that, the recited reason was a sham.” Id. at 179. In the case at hand, the only evidence of the city’s purpose is the statement by the City Administrator indicating a secular purpose as well as the fact that the city accepted the monument on the same terms as it did other structures and monuments that have been donated. In these circumstances, the city’s stated reason should stand and the inquiry should proceed to the second part of the Lemon test. In any event, to ascribe what the Court believes might have been the Eagles’ purpose to the city conflicts with Lynch v. Donnelly.[13]
*1046 Third, I cannot agree that merely looking to the text or to the “content and context of the monument itself’ can provide the “clear evidence” of religious purpose that the Court finds. Ante at 1036, 1038. As a general matter, the content and context of the monument are more usefully considered under the “endorsement” inquiry or under the second part of the Lemon test and should not be the sole basis for ascribing a religious purpose to a governmental entity where the record is largely devoid of such evidence. See Lynch, 465 U.S. at 680, 104 S.Ct. 1355.
In any event, I cannot agree that, in and of itself, the content of the monument establishes a religious purpose that is attributable to the city. The contents of the monument are arranged in a way that places the Ten Commandments within the Judeo-Christian tradition, a tradition that undergirds the history of the western world and of America. First there is the Semitic script, which is clearly Hebrew in origin, depicted at the top of the monument. With the Semitic script are joined two Stars of David placed near the bottom of the monument. The clearly Christian item is the Chi Rho symbol, commonly regarded as the sign of Christ. Within the boundaries marked by these religious symbols is a non-denominational rendering of the Ten Commandments. On top of the text are two non-religious symbols representing America, the all-seeing eye (part of the Great Seal adopted by the Continental Congress) and an eagle holding an American flag. The non-religious symbols representing America and its founding then link the text to our nation’s history, where the code of conduct embodied in the commandments has played an important role. See, e.g., County of Allegheny v. ACLU, 492 U.S. 573, 652-53, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989) (Stevens, J., concurring in part, dissenting in part, and discussing Moses as great law giver); Stone v. Graham, 449 U.S. 39, 42, 101 S.Ct. 192, 66 L.Ed.2d 199 (1980) (noting that the Ten Commandments and the “Bible may constitutionally be used in an appropriate study of history, civilization, ethics, comparative religion, or the like”); see also Edwards v. Aguillard, 482 U.S. 578, 593-94, 107 S.Ct. 2573, 96 L.Ed.2d 510 (1987) (observing that Stone “did not mean that no use could ever be made of the Ten Commandments, or that the Ten Commandments played an exclusively religious role in the history of Western Civilization”); Lynch, 465 U.S. at 677, 104 S.Ct. 1355 (noting governmental acknowledgments of religious heritage in legal tradition); Lynch, 465 U.S. at 691, 104 S.Ct. 1355 (O’Connor, J., concurring and noting that the State in Stone “plainly had some secular objectives, such as instilling most of the values of the Ten Commandments and illustrating their connection to our legal system”). In this presentation, the display illustrates the importance of the rule of law and the long tradition of legal codes of conduct in our own history and in the history of the western world. Although it is impossible to know whether the juveniles at whom this monument was aimed grasped the sophisticated imagery on the thousands of Eagles monuments, the monument itself tends to corroborate the Eagles’ stated purpose for undertaking the program. Therefore, I disagree with the Court’s conclusion that the monument itself proves that Plattsmouth had a religious purpose. Moreover, “by focusing almost exclusively on” the monument itself, the Court makes the same error that the Supreme Court described in Lynch, 465 U.S. at 680, 104 S.Ct. 1355. The Court should have concluded that the city’s purpose was either secular or, as the District Court concluded, impossible to discern on the record made in this case. The analysis must then proceed to the second part of the Lemon test.
*1047 B.
I cannot agree with the Court’s finding that Plattsmouth had a religious purpose for two other reasons. First, although the Court states that it does not “adopt a rule of presumptive invalid religious purpose for all religious displays on public property,” Ante at 1038, it is' difficult to imagine any Ten Commandments display that could pass muster. In fact the Court makes it clear that it would find an Establishment Clause violation no matter where the city displayed this gift. Id. at 1042 (“The government’s adoption of [the monument’s] religious message is apparent to the reasonable observer whether the monument is near City Hall or not.”). With the actions of former Chief Justice Moore in Glassroth on one end of the spectrum, and the City of Plattsmouth on the other end of the spectrum, the Court has left little room for displays that will not run afoul of the Establishment Clause. It is hard to see, for instance, how the Ten Commandments plaque affixed to the side of the Chester County courthouse in Freethought Society v. Chester County, 334 F.3d 247, 251 (3d Cir.2003), could pass muster under this Court’s opinion. While the Court notes the existence of that case, it makes little effort to distinguish it beyond noting that the plaque was present longer (some eighty years total) than this monument and that, in this case, Platts-mouth has done more to maintain the monument and to celebrate its presence because the city returned the monument to its upright position after it had been toppled over. See Ante at 1039; see also Freethought Soc’y, 334 F.3d at 251.
I part ways with the District Court and this Court’s opinion in one final respect. I cannot agree with their reliance on those “Ten Commandment” cases in which evidence of religious purpose was explicit. Thus, I disagree with the District Court’s conclusion that “Books [v. City of Elkhart ] is the next best thinking on the subject,” absent “specific guidance from the Supreme Court” or from the Eighth Circuit. 186 F.Supp.2d at 1026. In Books, the evidence regarding religious purpose was explicit, for the monument was dedicated in a ceremony featuring, literally, a priest, a rabbi, and a minister, some of whom invoked religion when speaking of the monument and of its purpose. ' See Books v. City of Elkhart, Ind., 235 F.3d 292, 303 (7th Cir.2000), cert. denied, 532 U.S. 1058, 121 S.Ct. 2209, 149 L.Ed.2d 1036 (2001). So too in Adland v. Russ, 307 F.3d 471, 482 (6th Cir.2002), cert. denied, — U.S. -, 123 S.Ct. 1909, 155 L.Ed.2d 826 (2003), where the state law implementing Kentucky’s plan to remqve an Eagles monument from storage and display it on the grounds of the state capítol listed (arguably) overtly religious reasons for erecting the monument. Finally, in Glassroth, the evidence of former Chief Justice Moore’s religious purpose was explicitly clear. The clarity of the evidence in these cases belies the Court’s conclusion that there was clear evidence of Plattsmouth’s religious purpose.
Rather than rely on cases that are factually far removed to guide our decision, I would turn to Van Orden and Freethought Society. These cases provide a better structure within which to evaluate the plaintiffs’ claims. As already noted, in Van Orden, like the present case, there was little direct evidence of purpose and the Fifth Circuit rejected the plaintiffs attempt to prove purpose by association. Similarly, in Freethought Society, the evidence of purpose at the time the plaque was put in place was eighty years old and far removed from the city’s present reason for keeping the monument. Given the lack of evidence of a religious purpose, both courts proceeded to the second part of the Lemon test and, at the end of the day, *1048 found no violation of the Establishment Clause. I would do the same here.
II.
The opinion of the Court also holds that the second part of the Lemon test is violated by this monument’s presence in Memorial Park. Whether this inquiry is styled as the second element of the Lemon test (i.e., whether the “principal or primary effect [of the government action] advances [or] inhibits religion,” 403 U.S. at 612, 91 S.Ct. 2105), or as a test that looks for government “endorsement” of religion, it has never been the case that the mere presence of a religious display or monument on government land has, ipso facto, commanded the conclusion that the Establishment Clause was violated. Rather, the Supreme Court’s Establishment Clause cases suggest that something more is required for a court to determine that the display’s “principal or primary effect” is to advance religion or for a court to determine that a “reasonable observer would view [the] government practice as endorsing religion,” Capitol Square Review & Advisory Bd. v. Pinette, 515 U.S. 753, 777, 115 S.Ct. 2440, 132 L.Ed.2d 650 (1995) (O’Connor, J., concurring). I would reverse the decision of the District Court because I cannot conclude that the monument’s primary effect is to advance or to endorse religion.
The Ten Commandments have both a secular and a religious message. Crucial to the question of whether the Establishment Clause is offended by a display such as this is the context of the display and the facts related to its history. Because the principal or primary effect of the monument is not to advance religion to any greater extent than the Supreme Court has already permitted, the “effects” part of the Lemon test is not violated. See Lynch, 465 U.S. at 682, 104 S.Ct. 1355 (“We are unable to discern a greater aid to religion deriving from inclusion of the creche than from these benefits and endorsements previously held not violative of the Establishment Clause.”). Religion receives little, if any, benefit from the presence of the monument in Memorial Park. Any benefit that does tend to flow to religion cannot reasonably be said to be greater than the benefit religion received as a result of the Sunday closing laws approved of in McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961), the supplying of textbooks to religious schools approved of in Board of Education v. Allen, 392 U.S. 236, 88 S.Ct. 1923, 20 L.Ed.2d 1060 (1968), the tax exemptions for religious institutions approved of in Walz v. Tax Commission of New York, 397 U.S. 664, 90 S.Ct. 1409, 25 L.Ed.2d 697 (1970), the tax deductions for tuition expenses at religious institutions approved of in Mueller v. Allen, 463 U.S. 388, 103 S.Ct. 3062, 77 L.Ed.2d 721 (1983), the legislative prayers approved of in Marsh v. Chambers, 463 U.S. 783, 103 S.Ct. 3330, 77 L.Ed.2d 1019 (1983), the display- of a creche approved of in Lynch, 465 U.S. 668, 104 S.Ct. 1355, the display of a menorah and Christmas tree approved of in County of Allegheny v. ACLU, 492 U.S. 573, 109 S.Ct. 3086, 106 L.Ed.2d 472, or the student vouchers approved of in Zelman v. Simmons-Harris, 536 U.S. 639, 122 S.Ct. 2460, 153 L.Ed.2d 604 (2002).[14]
The meatier question in this case— where so little “benefit” passes to religion — is the endorsement question. That is, would the reasonable person, who is aware of the history and context of this case, perceive that the City of Plattsmouth endorses religion, or any particular brand of religion, because it has permitted this monument to be erected in a corner of a city park? Pinette, 515 U.S. at 780, 115 S.Ct. 2440 (O’Connor, J., concurring) (cited *1049 in Zelman, 536 U.S. at 655, 122 S.Ct. 2460, and quoted in Good News Club v. Milford Central School, 533 U.S. 98, 119, 121 S.Ct. 2093, 150 L.Ed.2d 151 (2001)). I cannot conclude that the reasonable observer would perceive such endorsement.
In this case, the reasonable observer knows that the Eagles donated this monument in 1965 and that the city permitted the monument to be erected in 1966.[15] Although the reasonable observer knows that Art Hellwig and certain other individuals, who were also city employees, helped to erect the monument, the reasonable observer does not know in what capacity these individuals were acting. The reasonable observer, therefore, is quite .aware that these individuals may have been acting in their individual capacities. The reasonable observer also knows that the city, when asked why it accepted the monument and permitted it to be erected, stated that it had no contemporaneous records regarding that decision but surmised from its practice of accepting donations and from the fact that the Eagles are an important civic organization that it was “safe to assume that the Eagles’ monument ... was accepted by the city and placed in Memorial Park out of gratitude to the Eagles for their civic work.” 186 F.Supp.2d at 1033 (quoting Winkler affidavit). Further, our observer knows that the monument was placed in a corner of Memorial Park, that from the street the monument looks rather like a tombstone, and that the text of the Ten Commandments is not visible unless one enters the park and makes a special effort to approach the monument. The reasonable observer is also aware that Plattsmouth has accepted many other donated structures, plus donated recreation equipment and donated trees, and also knows that plaques are often affixed to these items to note or to commemorate the donations. More specifically, the reasonable observer knows that private groups, such as the' Lions Club, have erected structures (such as a picnic shelter) in the public parks for the benefit of all. The reasonable observer is cognizant of the fact that the city’s-practice is to maintain all these structures and the grounds surrounding them. Given these facts, I cannot conclude that the reasonable observer would perceive that the City of Platts-mouth is endorsing religion by retaining and maintaining the donated monument.
Nor can I agree that the monument itself does nothing to detract from the perception of endorsement. Ante at 1036-1037 (concluding monument and surroundings are inherently religious); id. at 1042 (concluding that the “inclusion of the patriotic symbol of an eagle gripping a flag on the monument impermissibly links patriotism and government to the religious teaching on the monument”). Rather, the monument is identified on its face as a gift of the Eagles. This fact informs, the reasonable observer that the city itself did not invest government time and money on the monument but was presented with a granite slab that it chose to place in a public park. The fact that the monument is identified as a gift of the Eagles may not be enough to convert the monument into private religious speech that would be protected by the Supreme Court’s decision in Capitol Square Review and Advisory Board v. Pinette, 515 U.S. 753, 115 S.Ct. 2440, 132 L.Ed.2d 650 (1995), but this fact clearly diminishes any perception of endorsement. Similarly, the fact that the monument sits in a corner of Memorial Park is also important to ohr reasonable observer. The placement of the smallish monument in a rather remote location suggests that Plattsmouth’s acceptance and *1050 display of the monument was not for the purpose of endorsing a religious message. Finally, as I have already noted, the reasonable observer is aware that the monument itself tends to highlight and emphasize the Ten Commandments’ role in the Judeo-Christian and American Founding traditions.
III.
For the foregoing reasons, I respectfully dissent from the opinion of the Court insofar as it finds Plattsmouth in violation of the Establishment Clause. Because I can perceive no religious purpose in the city’s decision to allow the monument to be erected and because the principal or primary effect of the monument is not to advance or endorse religion, I would reverse the decision of the District Court.

. Whether the final conclusion about the city’s religious or secular purpose is a purely legal or factual question, or is a mixed question of law and fact, does not matter because in this case it is clear that the Court has undertaken to make its own findings of fact on this issue.

. Even if the Eagles’ purpose is attributed to the city, there are grounds on which to conclude that their purpose was not religious. In Colorado v. Freedom From Religion Foundation, another Eagles monument case, the Colorado Supreme Court arrived at exactly that conclusion. 898 P.2d 1013, 1024 (Colo.1995), cert. denied, 516 U.S. 1111, 116 S.Ct. 909, 133 L.Ed.2d 841 (1996) (noting that the stated goal of the Eagles’ National Youth Guidance Project was not religious; that the juvenile court judge who came up with the idea "statfed] that posting the Ten Commandments was 'not to be a religious instruction of any kind,’ but rather was meant to ‘show these youngsters that there were such recognized codes of behavior to guide and help them’ and that .this explanation was consistent with what little evidence of purpose existed). See also Van Orden, 351 F.3d at 179-80 (strongly suggesting that the Eagles' program to' combat juvenile delinquency was not religious in purpose).

. This list of examples is not intended to be all-inclusive.

. The reasonable observer knows the monument was donated because it says so just beneath the symbols at the bottom of the text of the Ten Commandments.